# 14-2156-cv

IN THE

## United States Court of Appeals

### FOR THE SECOND CIRCUIT



NICOLE PHILLIPS, INDIVIDUALLY AND ON BEHALF OF B.P. AND S.P., MINORS,
DINA CHECK, ON BEHALF OF MINOR MC, FABIAN MENDOZA-VACA,
INDIVIDUALLY AND ON BEHALF OF MM AND VM, MINORS,

*Plaintiffs-Appellants,*

*v.*

CITY OF NEW YORK, ERIC T. SCHNEIDERMAN, IN HIS OFFICIAL CAPACITY
AS ATTORNEY GENERAL, STATE OF NEW YORK, DR. NIRAV R. SHAH,
IN HIS OFFICIAL CAPACITY AS COMMISSIONER, NEW YORK STATE
DEPARTMENT OF HEALTH, NEW YORK CITY DEPARTMENT OF EDUCATION,

*Defendants-Appellees.*

_____

*On Appeal from the United States District Court
for the Eastern District of New York (Brooklyn)*

## BRIEF FOR PLAINTIFFS-APPELLANTS
## WITH SPECIAL APPENDIX

PATRICIA FINN, ESQ.
*Attorney for Plaintiffs-Appellants
  Nicole Phillips, individually and on
  behalf of B.P. and S.P., minors,
  Dina Check, on behalf of minor MC,
  Fabian Mendoza-Vaca, individually
  and on behalf of MM and VM, minors*
450 Piermont Avenue
Piermont, New York 10968
845-298-0521

# Table of Contents

Standard of Review ..................................................................................3

Jurisdictional Statement .........................................................................3

Questions Presented ................................................................................3

Introduction .............................................................................................4

Statement of Facts ...................................................................................5

Procedural History ..................................................................................9

STATEMENT OF THE CASE ................................................................14

Summary of the Argument ...................................................................17

ARGUMENT ...........................................................................................19

I.   DEFENDANTS-APPELLEES' VACCINATION EXEMPTION
PROCESS VIOLATES THE FIRST AND FOURTEENTH AMENDMENTS
and NYS PHL 2164 ................................................................................19

A.  Quota Systems violate NYS PHL 2164 and are Unconstitutional....................19

B.  Classifications of Exemptions Based upon Religion Violate NYS
PHL 2164 and Are Unconstitutional ....................................................20

C.  NYS PHL 2164 Provides for Both Medical and Religious Exemptions ..........26

II.  DEFENDANTS-APPELLEES' EXEMPTION PROCESS
VIOLATES PROCEDURAL DUE PROCESS .......................................27

A. Religion Tests Violate Procedural Due Process ..............................27

III. PLAINTIFFS-APPELANTS' RIGHTS OF SUBSTANTIVE
DUE PROCESS HAVE BEEN VIOLATED ..........................................32

B. *Caviezel* Does Not Bar Plaintiffs-Appellants' Substantive
Due Process Claims ...............................................................................40

C. *Caviezel* Does Not Bar Plaintiff-Appellants' First Amendment
and Fourteenth Amendment Claims under NYS PHL 2164 ...............43

CONCLUSION ........................................................................................44

## Table of Authorities

### Cases

*Accord Zucht v. King*, 260 U.S. 174, 176 (1922)......................................40

*Boddie v. Connecticut,* 401 U.S. 371, 379 (1971) ...............................31

*Bruesewitz, et al. v. Wyeth LLC*, 131 S.Ct. 1068 (2011) ..........................33

*Buck v. Bell*. 274 U.S. 200 (1927)....................................................38

*California Regents v. Bakke,* 438 US 265, 317 (1978) ............................19

*Caviezel v. Great Neck Pub. Sch*., 500 F.App. 16 (2d Cir. 2012) ...........36

*Caviezel v. Great Neck Public Schools,* 739 F.Supp.2d 273 (E.D.N.Y. 2010) ........22

*Caviezel v. Great Neck Public Schools, et al.*,  500 F. App'x 16 (2nd Cir. 2012) .....40

*Chambers v. Time Warner, Inc.*, 282 F. 3d 147, 162 (2nd Cir. 2002).......................3

*City of Cleburne Texas v. Cleburne Living Center*, 473 U.S. 432 (1985) ..............41

*Cruzan v. Director, Missouri Department of Health*,
    497 U.S.261, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990).............................. 18, 41

*Gregory v. Daly*, 243 F.3d 687, 691 (2nd Cir.2001) ....................................3

*Griswold v. Connecticut*, 381 U.S. 479, 497 (1965 ....................................41

*Jacobson v. Commonwealth of Massachusetts*., 197 U.S. 11 (1905) ..... 5, 32, 36, 40

*King v. N.Y. State Div. of Parole*, 260 F. App'x 375, 380 (2d Cir. 2008)................25

*Lemon v. Kurtzman,* 403 U.S. 602 (1971) ......................................... 20, 28

*Mc Cartney v. Austin*, 31 A.D.2d 370 (3d Dep't 1969) ...................................36, 40

*McLaughlin v. Florida*, 379 U.S. 184 (1964) ...........................................41

*Memphis Gas, Light & Water Div. v. Craft,* 436 U.S. 1, 19 (1978)......................31

*Planned Parenthood of Southeastern Pa. v. Casey*, 505 US 833, 871 (1992)........36

*Shamrock v. Dell Buick-Cadillac, Inc.,* 45 N.Y.2d 156, 165-66 (1978) ................31

*Sheet Metal Workers v. EEOC*, 478 U. S. 421, 495 (1986) ...................................19

*Sherr and Levy v. East Northport School District*,
    672 F. Supp. 81 (E.D.N.Y. 1987)................................................ 20, 30

*Sherr v. Northport-East Northport Union-Free School District*,
    672 F.Supp. 81 (1987)........................................................17

*Snyder v. Mass*., 291 U.S. 97, 105 (1934 ..............................................42

*Washington v. Glucksberg*, 521 U.S. 702 (1997) .......................................41

*Washington v. Harper*, 494 U.S. 210 (1990)............................................41

## Standard of Review

Plaintiffs-Appellants seek review by the United States Court of Appeals for the Second Circuit of a decision granting Defendants-Appellees' Motions to Dismiss their lawsuit pursuant to FRCP 12(b)(6).  Therefore, a de novo standard of review applies.  *Chambers v. Time Warner, Inc.*, 282 F. 3d 147, 162 (2nd Cir. 2002) (citing *Gregory v. Daly*, 243 F.3d 687, 691 (2nd Cir.2001)).

## Jurisdictional Statement

Plaintiffs-Appellants appeal the decision from the Hon. William Kuntz, III of the United States District Court for the Eastern District of New York dismissing the lawsuit.  The District Court issued its Order on June 5, 2014, and Plaintiffs-Appellants filed a timely Notice of Appeal on June 10, 2014.  This Court has jurisdiction over the appeal under 28 U.S.C. § 1291.

## Questions Presented

1) Does Defendants-Appellees' vaccination exemption process violate the First Amendment religion clauses?

2) Does Defendants-Appellees' vaccination exemption process violate the Fourteenth Amendment equal protection and due process clauses?

**3)** Does Defendants-Appellees' exemption process violate New York State Public Health Law 2164 [PHL 2164]?

It is respectfully submitted that the foregoing should be answered in the affirmative.

## Introduction

On June 5, 2014, the Hon. William F. Kuntz, III dismissed Plaintiffs-Appellants' case granting a motion to dismiss to Defendants City of New York and State of New York [Defendants-Appellees] for failing to state a claim upon which relief could be granted. *A-348*. Plaintiffs-Appellants' case was scheduled for trial to begin on June 30, 2014. At the time of dismissal, the parties were actively engaged in discovery and depositions of defense witnesses. Open document discovery requests were pending regarding the policies and procedures of Defendants-Appellees with respect to the granting and denying of vaccination exemptions for school children, and the open discovery sought evidence of an alleged use of an impermissible quota system. Plaintiffs-Appellants' Complaint alleged violations of NYS PHL 2164, and sought to challenge the necessity and constitutionality of New York City's school immunization program on First, Ninth and Fourteenth Amendment grounds and under controlling Supreme Court

4

precedent set forth in the 1905 seminal case of *Jacobson v. Commonwealth of Massachusetts.*, 197 U.S. 11 (1905).

Plaintiffs-Appellants appeal the dismissal of their lawsuit by the Hon. William F. Kuntz, III of the United States District Court for the Eastern District of New York, dated June 4, 2014. *A-348*. Plaintiffs-Appellants base the appeal on arguments of law as well as newly-available evidence obtained during discovery not previously available to Plaintiff-Appellants at the time the Motion to Dismiss was fully submitted on February 10, 2014, and based upon other relevant medical and scientific evidence the Magistrate would not allow to be heard during the August 17, 2013 preliminary injunction hearing on Plaintiff-Appellant Check's medical exemption.

## Statement of Facts

Plaintiff-Appellant Check's daughter attended school in New York City from 2010 to 2012 having applied for and obtained a religious exemption from vaccinations pursuant to NYS Public Health Law 2164 [PHL 2164]. *A-311*. Infant Plaintiff-Appellant Check also has severe allergies and a compromised immune system, and she has experienced serious adverse reactions to previous vaccinations making her medically contraindicated for receiving any further immunizations. *A-311*. As a result, infant Plaintiff-Appellant Check would be eligible for both the

5

religious and medical exemptions from school vaccinations under New York State law. *A-311*. The challenged statute PHL 2164 provides for both medical and religious exemptions from school vaccination requirements. Plaintiff-Appellant Check has both reasons for refusing vaccinations, and therefore is entitled to both exemptions. *A-311*.

Defendant-Appellee City granted to Plaintiffs-Appellants Phillips and Mendoza-Vaca's religious exemptions, but rescinded Plaintiff-Appellant Check's previously granted religious exemption under which Infant Plaintiff Check had been attending school in New York City for over two years during 2010-2012. *A-311*. After being denied a continuance of the existing religious exemption by Defendant City-Appellee, Plaintiff-Appellant Check sought reinstatement of the religious exemption and was required to participate in an "interview process" where she had to answer five questions to "test" the sincerity of her religious beliefs. *A-311*. After completing the interview process and test questions, Plaintiff-Appellant Check was notified she failed the "religion test" by allegedly improperly answering the interview questions. *A-311*. After completing an informal appeal process, the Defendant-Appellee City upheld its decision to rescind the religious exemption to Plaintiff-Appellant Check "because she had submitted a medical exemption first," before re-applying for the religious exemption and because she

6

was "Catholic." *A-450-452*.  Plaintiff-Appellant Check has both sincere religious beliefs contrary to the practice of vaccination, and a valid medical basis for obtaining a medical exemption to vaccinations under PHL 2164.  *A-311*. Defendant-Appellee City violated PHL 2164 in failing to provide Plaintiff-Appellant Check either exemption because *inter alia* she was Catholic and failed the "religion test."  *A-311*.

Plaintiff-Appellant Check's religious exemption was rescinded on about October 2012 due to a clerical error after the school nurse mistakenly submitted a medical exemption to the City's School Health Liaison on behalf of Infant Plaintiff Check in connection with the child's 501 Education Plan.  *A-311*.  The school nurse mistakenly submitted a request for a medical exemption, based on Infant Plaintiff-Appellant  Check's severe allergies documented in the 501 Education Plan, even though the Infant Plaintiff-Appellant Check was attending school at the time under a previously granted religious exemption from vaccinations.  *A-311*.  Plaintiff-Appellant Check testified during the preliminary hearings and in her affidavit(s) that she did not submit the medical exemption application and that it was done in error by the school nurse as part of the 501 Education Plan.  *A-95, A-132*.  Upon receipt of the declined medical exemption from the school nurse, Plaintiff-Appellant Check's religious exemption was automatically vacated by Defendant-

Appellee City. *A-311.* Infant Plaintiff-Appellant Check has been barred admission to New York City public schools as a result. *A-311.* Defendant-Appellee City denied both the medical and religious exemptions despite Infant Plaintiff Check's documented serious reactions to previous vaccinations, and her parents' sincere and genuine religious beliefs contrary to the practice of vaccinating. *A-311.* Plaintiff-Appellant Check then filed this lawsuit, before consolidation, against Defendant-Appellee City. *A-53.*

About the same time, co-Plaintiffs-Appellants Phillips and Mendoza-Vaca likewise applied for and received religious exemptions from vaccinations, but unlike Check, their religious exemptions were granted to them without question and without being subjected to the same "religion test" that Plaintiff-Appellant Check allegedly failed. *A-311.* Upon information and belief, at no time has Defendant-Appellee City ever questioned the validity of Plaintiff-Appellant Phillips' or Mendoza-Vaca's religious beliefs, yet all of the Plaintiffs-Appellants are similarly situated practicing Catholics with sincere religious beliefs contrary to the practice of vaccinating. *A-311.*

In or about November 2011, Plaintiff-Appellant Phillips' children were excluded from school because, upon information and belief, there was an unconfirmed case of a classmate contracting chickenpox. *A-311.* Plaintiff-

Appellant Mendoza-Vaca's children were also excluded from school for similar reasons. *A-311*. Plaintiffs-Appellants Phillips and Mendoza-Vaca sought judicial review challenging the exclusion of their children pursuant to the Chancellor's Regulations[1] and NYS exclusionary laws[2] that bar children from attending school for extended periods of time if there is a suspected case of a vaccine targeted illness at the school. *A-311*. Plaintiffs-Appellants Phillips and Mendoza-Vaca children continue to face more school exclusions with each new added vaccine mandate to the school's immunization schedule if another child should happen to present with symptoms of an alleged vaccine preventable illness. Plaintiffs-Appellants Phillips' and Mendoza-Vaca's claim is that the exclusion of their children deprives them of their religious exemption under PHL 2164, and is unconstitutional violating the free exercise clause, equal protection and their rights of due process. *A-311*.

## Procedural History

Plaintiff-Appellant Check was denied both the religious and medical exemptions from vaccinations for her daughter by Defendant-Appellee City. *A-311*. After being denied the exemptions, and after Check exhausted her

---

[1]    NYC Regulation of the Chancellor A-701, III(4)(c)-Exclusion
[2]    Title 10 NYCRR 66-1.10 Exclusionary regulations

administrative appeals to the Chancellor's office, she sought judicial review. *A-311*. On or about February 12, 2013, Check sought equitable relief from the District Court, i.e. the religious and medical exemptions allowable under PHL 2164, and provided for in the Chancellor's regulations. *A-53*. Subsequently, Check moved by Order to Show Cause, twice, for preliminary injunctions permitting her to send her daughter to school during the pendency of this action and both were denied. *A-51-131; A-233-248*.

On or about March 1, 2013, Plaintiff-Appellant Check appeared for the first time before Hon. Lois Bloom, USMJ for a preliminary injunction hearing, seeking relief from the rescission by Defendant City-Appellee of Check's religious exemption previously granted to her in 2010 under NYS PHL 2164. *A-132*. USMJ Bloom issued her Report and Recommendations on March 22, 2013, recommending a denial of the preliminary injunction based on a lack of probability of success on the merits. *A-200*. Check set forth written objections. *A-214*. The Court adopted the Report and Recommendations of the Magistrate and denied the preliminary injunction for the religious exemption. *A-227*.

On or about August 27, 2013, Plaintiff-Appellant Check appeared again before the Hon. Lois Bloom USMJ for another preliminary injunction hearing. *A-255*. This time Plaintiff-Appellant Check sought review of the denied medical

10

exemption under NYS PHL 2164. *A-255*. The Court agreed to hear oral argument, but would not allow Plaintiff-Appellant Check to introduce any medical testimony during the preliminary hearing supporting her daughter's medical condition and claim for a medical exemption, and recommended denying the relief without allowing the scientific and medical evidence. *A-254, A-284*.

USMJ Lois Bloom issued her Report and Recommendations on September 11, 2013 recommending a denial of the preliminary injunction for the medical exemption based on a lack of probability of success on the merits. *A-284*. Check set forth written objections, but the Court ultimately adopted the Report and Recommendations without any medical testimony or scientific evidence allowed during the preliminary hearing on the medical exemption. *A-295, A-344*.

Plaintiff-Appellants Phillips and Mendoza-Vaca had brought their own actions prior to Check in the Eastern District Court on about January 2013 seeking invalidation of Defendant-Appellees' exclusionary laws and Chancellor's Regulation permitting the City to exclude their non-immunized children from school if another child presents with or may exhibit symptoms of a vaccine-targeted illness. *A-311*. Plaintiff-Appellants' claim is that the exclusionary laws they are being subjected to are discriminatory, unnecessary and disproportionate because if the other children in school are vaccinated, and the vaccinations protect

11

against disease, non-immunized children pose no risks to others warranting their exclusion from school for unreasonably long and extended periods of time. *A-311*.

On October 22, 2013, Plaintiffs-Appellants' cases were consolidated. *A-308*. Plaintiffs-Appellants then filed and served an Amended Complaint for the consolidated action, naming all of the above-captioned Defendants-Appellees. *A-311*. A trial was scheduled for June 30, 2014. Pursuant to the briefing schedule, the Defendants-Appellees served Motions to Dismiss. *A-333, A-336.* While Defendants-Appellees' Motions to Dismiss were pending there was no stay regarding discovery by Order of Judge Kuntz, and the parties proceeded to depositions and document disclosure while the motions to dismiss were pending. As part of discovery, Plaintiffs-Apellants took the deposition of Julia Sykes, New York City Department of Education Health Services Coordinator on May 14, 2014, and exchanged voluminous paper discovery, expert reports and other information with Defendants-Appellees. *A-387.* Plaintiffs retained Dr. Yehuda Shoenfeld to review Infant Plaintiff Check's medical condition and the appropriateness of the 69 different vaccinations required for her to attend school in New York City.[3] *A-503*. Dr. Shoenfeld[4], a world-renowned immunologist and vaccine injury expert, opined

---

[3]   http://www.cdc.gov/vaccines/schedules/hcp/imz/child-adolescent.html

[4]   http://www2.tau.ac.il/Person/medicine/researcher.asp?id=abkgceihd

in his report that vaccines are not appropriate for all individuals, and he concurred with Dr. Gabriel, Infant Plaintiff Check's treating pediatrician, that vaccines are not appropriate for Infant Plaintiff Check based on her documented, serious previous reactions to vaccinations. *A-503*.

On June 5, 2014, the District Court granted Defendants-Appellees' motion to dismiss denying Plaintiffs-Appellants any opportunity to proffer the scientific or medical evidence or the deposition testimony of Julia Sykes. *A-348*. The District Court dismissed the lawsuit without ever reviewing any of the evidence demonstrating that Defendants-Appellees use a quota system for granting and denying exemptions. The Court denied the relief without allowing any medical testimony during the preliminary hearing, and without reviewing the expert report of Dr. Yehuda Shoenfeld recommending against immunizations for Infant Plaintiff Check. *A-503*. On June 10, 2014 the instant Notice of Appeal was filed. *A-354*. On June 19, 2014 Plaintiffs-Appellants brought a Motion to Reconsider the District Court's Order dismissing the case. *A-357*. Said motion was denied in the district court for lack of jurisdiction. *A-517*. On July 1, 2014, the Defendants-Appellants added another six more vaccines (est. 1.5 million doses) to the school

immunization schedule by-passing the legislative process without notice or judicial review. [5]

## STATEMENT OF THE CASE

Plaintiffs-Appellants brought suit in the District Court alleging violations of PHL 2164 and to challenge the constitutionality of the Defendant-Appellees' policies and procedures regarding religious and medical exemptions to the school immunization requirements; the exclusionary rules and regulations applied to non-immunized children, and to challenge the necessityand safety of the school vaccination mandates under *Jacobson*[6].

With regard to Plaintiff-Appellant Check's claim, Check's evidence demonstrates she is entitled to both medical and religious exemptions to vaccinations, but was denied both because Defendant-Appellee City allegedly uses an 1) impermissible quota system for granting and denying exemptions; 2)

---

[5]

http://www.p12.nysed.gov/sss/schoolhealth/schoolhealthservices/immunizationlettertoschools.pdf (additional doses of polio and varicella) and http://schools.nyc.gov/NR/rdonlyres/461805A3-25CC-4397-AE8E-F8A32BCF6335/0/SH65MedReq201415_Final.pdf (addition of flu and pneumococcal)

[6]     NYC Regulation of the Chancellor A-701, III(4)(c) and Title 10 NYCRR 66-1.10

impermissibly classifies exemption applicants based upon religion, and 3) because Check has both medical and religious reasons for refusing vaccinations that throws up a "red flag."  Denying Plaintiff-Appellant Check the exemptions based on the forgoing violates PHL 2164, and violates the First, Ninth and Fourteenth Amendments to the United States Constitution.  New evidence obtained by Plaintiff-Appellants during discovery, unavailable to the district court prior to dismissal of the lawsuit, includes inculpatory documents demonstrating that Defendants-Appellees use an impermissible quota system for granting exemptions to only 1.2% of children attending New York City schools violating PHL 2164, and fine school officials up to $2000 a day for non compliance with the quota. [7] Additional evidence obtained during the deposition of Julia Sykes, the School Health Liaison Coordinator responsible for school vaccination compliance in New York City, demonstrates the Defendants-Appellees are using quotas, have a policy and practice of impermissibly classifying applicants based upon religion, and an offending policy and practice of automatically challenging parents who have both medical and religious reasons for avoiding vaccinations as Plaintiff-Appellant Check has.  *A-515*.  Yet, PHL 2164 provides for both medical and religious

---

[7]      *Quotas "`impose a fixed number or percentage which must be attained, or which cannot be exceeded,'" Sheet Metal Workers v. EEOC, 478 U. S. 421, 495 (1986) (O'CONNOR, J., concurring in part and dissenting in part), and "insulate the individual from comparison with all other candidates for the available seats,"* **University of California Regents v. Bakke, 438 US 265 at 317** *(opinion of Powell, J.)*

15

exemptions to school vaccination mandates, and the statue includes no quotas, sets forth no specific religious affiliations and extends exemptions to any applicant that holds sincere religious beliefs contrary to vaccinating and\or has a valid medical contraindication to vaccinations.

During the August 27, 2014 preliminary hearing on the medical exemption, Plaintiff-Appellant Check was precluded by Order of the USMJ Bloom from proffering scientific and medical testimony challenging the necessity of the school vaccine mandates infant Plaintiff Check is subjected to, and the Court precluded Plaintiffs-Appellant Check from introducing any medical testimony or evidence at the preliminary hearing setting forth the harm and health risks vaccinations pose to her child. *A-254.* Additionally, the expert report from Plaintiff-Appellant Check's medical expert Dr. Yehuda Shoenfeld, who concurred with Infant Plaintiff-Appellant Check's treating physician Dr. Gabriel, that Infant Plaintiff Check is contraindicated for receiving any vaccinations based on previous serious and life-threatening reactions, was never heard by the district court that dismissed the case in error on June 5, 2014 in a sweeping decision that misapprehended the controlling case law, and respectfully, in error, misapplied PHL 2164. *A-348, A-503.* The newly obtained discovery evidence demonstrates clear violations of PHL 2164 by Defendant-Appellees, together with the District Court's misinterpretation

16

of the controlling precedent in this case, entitles Plaintiff-Appellants to a reversal of the decision because the law involving vaccinations in New York State is far from "well settled." *A-348*.

## Summary of the Argument

Plaintiffs-Appellants ask the Court to reverse the District Court's June 5, 2014 Order granting Defendants-Appellees' Motions to Dismiss in light of the new evidence obtained in discovery; the failure to consider Plaintiffs-Appellants' relevant scientific and medical evidence; and the overlooked controlling case law. Defendant-Appellee City produced materials in discovery that prove Plaintiffs-Appellants' allegations of discriminatory exemption determinations based on quotas and membership in religious organizations, and not on the basis of sincere and genuine religious beliefs. *A-515-516*. Allegedly, only 1.2% of exemptions requested are allowed to be approved according to discovery documents obtained by Plaintiffs-Appellants from Defendant Appellee-City. *A-515-516*.

By favoring one religious organization over another, Defendant-Appellee City has failed to uphold both New York State law and its Constitutional obligations violating the Establishment Clause and Equal Protection, *See Sherr v. Northport-East Northport Union-Free School District*, 672 F.Supp. 81 (1987). Moreover, Dr. Shoenfeld's expert report shows that Infant Plaintiff Check does

indeed have serious contraindications to vaccination that could be life threatening, yet the evidence of these serious medical contraindications not considered by the Court for the medical exemption, ultimately served as a basis for an automatic rescission of Check's previously obtained religious exemption by Defendant-Appellee City.  *A-387, A-503, A-241*.  This violates due process.

In addition to the newly obtained quota information and other inculpatory evidence, the district court in error overlooked controlling decisions of the Supreme Court that must be considered when reviewing challenges to vaccination mandates.  While Supreme Court precedent on the police power is relevant to vaccination mandates, so too is authority on an individual's right to personal autonomy and the right to refuse unwanted medical treatment. This line of Supreme Court cases on personal autonomy require the Court to apply at least intermediate scrutiny, if not strict scrutiny, to the case.  *See Cruzan v. Director, Missouri Department of Health*, 497 U.S.261, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990).

The new evidence, overlooked binding precedents and heightened scrutiny would reasonably alter the conclusions the Court reached in its June 5th decision warranting reversal.  Thus, Plaintiffs-Appellants respectfully request the Court consider the previously-unavailable evidence that would have been and should

have been heard had the District Court not misapplied controlling precedent and

dismissed the lawsuit constituting reversible error.

## ARGUMENT

## I.  DEFENDANTS-APPELLEES' VACCINATION EXEMPTION PROCESS VIOLATES THE FIRST AND FOURTEENTH AMENDMENTS and NYS PHL 2164

### A.  Quota Systems violate NYS PHL 2164 and are Unconstitutional

New evidence obtained during discovery shows that the Defendant City-

Appellee uses an impermissible "quota" system, and punishes school officials who

grant exemptions above 1.2% of the school population with fines of up to $2000

per day.[8]  *A-515-516.*  Quotas "`impose a fixed number or percentage which must

be attained, or which cannot be exceeded,'" *Sheet Metal Workers v. EEOC*, 478 U.

S. 421, 495 (1986), *University of California Regents v. Bakke,* 438 US 265, 317

(1978). This violates state law because PHL 2164 provides for no quotas. Thus,

pursuant to the "quota," Plaintiff-Appellant Check, who had two strikes against her

for being both Catholic and having medical contraindications to vaccinations, was

denied both exemptions.  Plaintiff-Appellant Check had a slim chance of obtaining

---

[8] http://www.health.ny.gov/prevention/immunization/schools/2004-09_exclusion_letter.htm

an exemption regardless of the sincerity of her religious beliefs or the validity of

the non-reviewed medical evidence under the restrictive 1.2% quota.  This violates

NYS PHL 2164 and is unconstitutional.

## B.  Classifications of Exemptions Based upon Religion Violate NYS PHL 2164 and Are Unconstitutional

The First Amendment to the Constitution provides that "Congress shall

make no law respecting an establishment of religion, or prohibiting the free

exercise thereof."  Government- sponsored religious tests are unconstitutional.

*Lemon v. Kurtzman,* 403 U.S. 602 (1971)(holding that Government action violates

the Establishment Clause unless it has a significant secular purpose, does not have

the primary effect of advancing or inhibiting religion, and does not foster excessive

entanglement between government and religion).

Based on First Amendment principles recited in *Lemon* and under PHL

2164, one need not belong to a specific religious group to receive an exemption.

*Sherr and Levy v. East Northport School District*, 672 F. Supp. 81 (E.D.N.Y. 1987).

Despite Ms. Sykes' statements that she does not use membership in a religious

organization to determine whether to grant a religious exemption, her deposition

proves that that is precisely what she does.  Ms. Sykes said that she grants

exemptions to Christian Scientists but that Catholics asserting the tenets of

Catholicism would not be entitled to an exemption. *A-461*.  *Sherr* held that this line

of reasoning is constitutionally impermissible, yet Ms. Sykes during depositions

described how she uses membership in a religious organization to evaluate requests

for religious exemptions.  In the deposition Ms. Sykes testified as follows:

   *PATRICIA FINN*

3.      Q.  Do Christian Scientists automatically get exemptions?

   *JULIA SYKES*

4     A.  Yes.

5     Q.  So although you don't know what a
6   tenet is, if someone is a member of a church
7   with a tenet contrary to vaccinating, you
8   grant an exemption?

9     A.  Yes, because the Catholics --
10   unless there's different sects of the
11   Catholic religion, they do believe in
12   immunization.

*A-461*.

   Plaintiff-Appellant Check may be Catholic Christian and not Christian

Scientist, but that does not mean that she cannot hold sincere religious beliefs

contrary to vaccination similar to Christian Scientists based on the same teachings

of Jesus Christ.

"Attempts to ascertain the sincerity of claims of religious belief must be undertaken with extreme caution." *See Sherr and Levy v. Northport-East Northport U. Free Sch. District*, 673 F. Supp. 81 (E.D.N.Y. 1987); *Moses v. Bayport Bluepoint Union Free School District,* E.D.N.Y. Docket No. 2:05-cv-03808; *Kushner v. South Colonie Central School District, et al.*, N.D.N.Y. Docket No.: 1-07-cv-00058; *Hadley v. Rush Henrietta Central School Dist.*, 409 F.Supp.2d 164 (W.D.N.Y. 2006); *Berg v. Glen Cove City School Dist.*, 853 F. Supp. 651 (2nd Cir. 1994).  Notably, in 2012 *in Caviezel v. Great Neck Public Schools,* 739 F.Supp.2d 273 (E.D.N.Y. 2010) the district court departed from the well-established reasoning in an abrupt change in direction involving constitutional challenges to the controversial PHL 2164 dating back over decades in the Eastern District to *Sherr*. *See Caviezel v. Great Neck Public Schools,* 739 F.Supp.2d 273 (E.D.N.Y. 2010)

In this case however it is abundantly clear Ms. Sykes did not take the care required to evaluate properly the sincerity of Plaintiff-Appellant Check's religious beliefs as required by *Sherr* and its progeny, at least in part because she received no training from the City on how to do so, and she does not understand what the law requires of her.  Ms. Sykes herself admits she doesn't know if a parent is telling the truth or not, and uses impermissible criteria of membership in a religious

22

organization (Catholicism) that she believes does not hold "tenets" contrary to vaccination as a basis for denying religious exemptions. *A-461; A-491*.

More important, a request for a medical exemption and a religious exemption is not a valid basis to deny both because both are allowable under PHL 2164, and they are not mutually exclusive. Ms. Sykes impermissibly classified Plaintiff-Appellant Check not only as a Catholic, but further classified her as a Catholic with medical fears for avoiding vaccinations. Ms. Sykes did so because she was faced with an impossible task that no one can perform in determining religious sincerity and uses legitimate concerns and medical fears as an ill conceived method for concluding lack of religious sincerity. Both Ms. Sykes and USMJ Bloom impermissibly classified Plaintiff-Appellant Check as religious with medical fears as a basis for denying the exemption. *A-461*. Therefore, in order to get a religious exemption under NYS PHL 2164, an individual cannot express any medical fears, valid or otherwise, lest they throw up a "red flag" and are denied both. *A-472*

This is not only unreasonable but unconstitutional, and violates NYS PHL 2164 because vaccines are indeed unsafe and not appropriate for everyone *A-503*. Side effects such as high fevers and rashes are common, and children often become

sick after vaccinating and people do die from them.[9]  To require any parent whose child is facing dozens of relentless vaccines with potentially devastating side effects not to express "medical fears" is completely unreasonable because children can be seriously injured by the vaccinations that are "unavoidably unsafe,"[10] and Infant Plaintiff Check clearly has experience serious, life-threatening reactions.

Since its inception in 1986, the United States Court of Federal Claims has awarded nearly $ 3 billion dollars in compensation to those injured by vaccinations, and the flu vaccine targeted for pre-schoolers in New York City this school year tops the list of compensated cases by the Vaccine Court.[11] Ms. Sykes, who appeared to be a dedicated public servant, genuine and credible in her testimony, is nonetheless ill-equipped to determine the sincerity of anyone else's religious beliefs, and because of the above discriminatory actions and an ill-conceived exemption process, the Defendant-Appellees violated Check's First, Ninth and Fourteenth Amendment rights.

---

[9]Vaccine Act 42 U.S.C 300aa-22(b)(1)& (2)
http://scholarship.kentlaw.iit.edu/cgi/viewcontent.cgi?article=4037&context=cklawreview
[10] http://www.hrsa.gov/vaccinecompensation/statisticsreports.html#Stats
[11] National Vaccine Injury Compensation Program
http://www.hrsa.gov/vaccinecompensation/index.htm
lhttp://www.hrsa.gov/vaccinecompensation/dojpresentation.pdf and
http://www.hrsa.gov/vaccinecompensation/statisticsreports.html (showing that since the VCIP began there have been 1,390 vaccine injury claims filed for flu shot injuries, the second highest number of claims for a specific vaccine only second to DTP whole cell pertussis which is no longer administered), http://www.cdc.gov/mmwr/preview/mmwrhtml/00048610.htm

Plaintiffs-Appellants raise a claim for a violation of equal protection.  In order to claim equal protection violations, plaintiff must identify at least one individual with whom they can be compared. *See King v. N.Y. State Div. of Parole*, 260 F. App'x 375, 380 (2d Cir. 2008).  Here Plaintiff-Appellant Check points to Plaintiffs-Appellants Phillips and Mendoza-Vaca as individuals similarly situated who were granted a religious exemption without testing, questioning or follow-up. Plaintiffs-Appellants Mendoza-Vaca and Phillips were granted the exemptions based upon a letter they submitted to their school.  Plaintiffs-Appellants Phillips and Mendoza-Vaca are practicing Catholics and were granted a religious exemption by the "person or prinicipal" in charge of the school not Ms. Sykes.[12] To deny Plaintiff -Appellant Check a religious exemption because she is a Catholic that also has medical fears about vaccines, yet grant the exemption to the other Catholic Plaintiff families who expressed no medical fears violates Equal Protection and runs afoul of *Sherr* and its progeny in the Second Circuit.

Ms. Sykes stated she would have granted an exemption if she had received "something on the Catholic stationary explaining what [the Checks'] beliefs are," and in doing so completely discounting Plaintiff-Appellant Check's personal religious beliefs contrary to the practice of vaccinating. *A-459.*  Also, had Check

---

[12]      PHL 2164 "person or principal in charge"

25

been a Christian Scientist, the City would have granted the exemption. *A-461*.

Christian Scientists "automatically get exemptions." *A-461*.   Ms. Sykes conceded

that the City has no "methodology for determining sincerity" of claimed religious

beliefs. *A-491*. The City's exemption procedures as they now exist violate Equal

Protection.

## C. NYS PHL 2164 Provides for Both Medical and Religious Exemptions

The New York statute has no requirement that Plaintiffs-Appellants belong

to any organized or specific religion. PHL 2164.  Indeed, the Constitution prohibits

such discrimination. Here, Ms. Sykes stated that if applicants mention anything

about medical reasons [in a religious exemption statement], then she "would send

them a letter telling them that they should request a medical exemption." *A-480*.

When Plaintiffs-Appellants' counsel asked, "is it possible that a person has a

medical and religious reason for avoiding vaccines?" Ms. Sykes responded "either

it's their religious beliefs or it's a medical reason why they can't get the vaccine."

*A-481*.  This prevents anyone with medical concerns from obtaining a religious

exemption even if that applicant's family has sincere religious beliefs contrary to

vaccination.  Defendant-Appellee City's exemption process deprives applicants

with both medical and religious objections to vaccinations their rights under PHL

2164 and is unconstitutional.

## II.  DEFENDANTS-APPELLEES' EXEMPTION PROCESS VIOLATES PROCEDURAL DUE PROCESS

### A. Religion Tests Violate Procedural Due Process

In this case, the Defendant City-Appellee's religious exemption to

vaccinations processes violates the Religion Clauses of the First Amendment, equal

protection and due process by permitting Ms. Sykes, a government employee, to

evaluate and "test" Plaintiff-Appellant Check's religious beliefs based on arbitrary

quotas, ill-conceived notions about religion, and a clear misunderstanding of PHL

2164.  Both the statute and the related state and city rules of procedure force

parents to detail their religious beliefs and submit to a test, leaving the

determination of whether or not to grant the religious exemptions within the

subjective judgment of one school official who is unqualified to make such a

determination. *A-325*.  Ms. Sykes' deposition shows that she made decisions about

Check's religious beliefs, which significantly intertwined religion with government

function that had no significant secular purpose and had the primary effect of advancing some religions over others. *Lemon, supra*.

Ms. Sykes was ill-equipped to pass judgment on the religious beliefs of those who sought religious exemptions. Ms. Sykes was faced with an impossible task and forced to make decisions regarding the sincerity and genuineness of Check's beliefs among her other duties, which included vision screening exams. *A-393*. Ms. Sykes stated that she received no training on the vaccination exemption process, and no specific religious training regarding how to determine the sincerity of religious beliefs (if indeed such training could exist), but yet she trains other City employees on the requirements of NYS PHL 2164, who then interview and test parents' religious beliefs in a complex network of City employees who have no clue what they are doing. *A-394*. Julia Sykes' deposition makes clear that it is impossible for her to determine whether or not a parent's religious belief is sincere, yet Ms. Sykes receives and reviews on behalf of the Defendant City-Appellee "ten to twenty religious exemptions a day," and trains others to review religious exemptions throughout New York City *A-394; A-419*. Ms. Sykes stated in the deposition:

*PATRICIA FINN*

*23    Out of the exemptions that you granted last year, you*

28

24    have no idea whether they were based on

25    sincere religious beliefs or not?

1              JULIA SYKES            124

2        A.   Well, if the parents explained what

3    their religious beliefs are, I'm sure they

4    were sincere in what they believe.  It may

5    not be what someone else may believe, but if

6    they wrote it, they're sincere in what they

7    believe.

8        Q.   How do you know they're not lying?

9        A.   I don't know.

10       Q.   Then how do you know they're

11   sincere?

12       A.   I don't know if they're sincere and

13   I don't know if they're not lying.

14       Q.   So out of the hundred plus

15   exemptions that your office granted last

16   year, you you don't know if they were sincere or

17    *not?*

18       *A.   No, but they answered the*

19    *questions.*

*Sykes, A-492-493.  [Emphasis added].*

If Ms. Sykes cannot determine the sincerity of any applicant's religious beliefs, how can she possibly pass judgment on whether Plaintiff-Appellant Check's beliefs comport with PHL 2164?  Under the guidance of the Defendant-Appellee City law department and health office, Ms. Sykes developed an elaborate system of questions purporting to be a procedure for measuring the sincerity of religious beliefs.  In her testimony, Ms. Sykes admits that some of the questions are irrelevant and others she does not herself understand. *A-387;A-435.*  Ms. Sykes is tasked with determining the sincerity of Check's religious beliefs but was unable to herself to discern the difference between a personal religious belief and a religious tenet. *A-460.*  Ms. Sykes states that religious exemption letters pulled from the internet are denied, but later states that when she is unsure whether a religion is "real", (although whether a religion is in fact "real" is irrelevant, *Sherr v. Northport-East Northport U. Free Sch. D.,*672 F. Supp. 81 (E.D.N.Y. 1987), she goes to the internet for her information.  *A-418, A-445.*

In her letter requesting a religious exemption, Plaintiff-Appellant Check states, "It is our belief that the God given immunities we are born with cannot be improved upon nor should we try to do this through unnatural, man-made, artificial immunizations that violate many aspects of our religious beliefs." *A-74, A-77*. Ms. Sykes identified the above-statement during the deposition as a "religious principle" contrary to vaccinating. *A-476*. Despite the apparent sincerity and genuineness of this letter, and the admission by Ms. Sykes that the statement is a valid religious basis for the exemption she still rejected it. *A-476*. Ms. Sykes testified she denied the exemption because Check had previously applied for a medical exemption and because Ms. Sykes believes that the Catholics do not oppose vaccination. *A-459-460, A-453, A-100*.

Defendant-Appellee City's improper application of PHL 2164 violates procedural due process rights under the Fourteenth Amendment. Plaintiffs-Appellants are entitled to a hearing on the factual issues before losing an interest. *See Memphis Gas, Light & Water Div. v. Craft,* 436 U.S. 1, 19 (1978) (citing *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)). The hearing permits the parties "the opportunity to assert their claims." *Shamrock v. Dell Buick-Cadillac, Inc.,* 45 N.Y.2d 156, 165-66 (1978). It follows that the administrative agency conducting a hearing or interview process for exemptions must apply the statute properly and

constitutionally; and that the vaccine mandates Plaintiffs-Appellants are subjected

to require some type of review by the legislature before Defendants-Appellees' add

or remove millions of doses of different diseases to the schedule without

explanation or rationale targeting New York City children.[13]  When this fails, as

has occurred here, the Court must intervene given the serious questions of public

health, safety and civil rights violations alleged in this case and as required under

the Supreme Court precedent of *Jacobson.*

## III. PLAINTIFFS-APPELANTS' RIGHTS OF SUBSTANTIVE DUE PROCESS HAVE BEEN VIOLATED

*Jacobson*'s reasoning does not preclude judicial review of vaccination

mandates as the district court reasoned in dismissing the lawsuit, to the contrary

*Jacobson* requires judicial review.  More than a century later after *Jacobson* there

is a growing body of scientific evidence that vaccinations being forced upon

children are being cheaply and unsafely manufactured in billions of doses in

poorly regulated labs in China and elsewhere, and the vaccines are unnecessary,

risky, not-proportional or harm avoidant being driven by fear and profit, not safety

---

[13]

http://www.p12.nysed.gov/sss/schoolhealth/schoolhealthservices/immunizationlettertoschools.pdf (additional doses of polio and varicella) and http://schools.nyc.gov/NR/rdonlyres/461805A3-25CC-4397-AE8E-F8A32BCF6335/0/SH65MedReq201415_Final.pdf (addition of flu and pneumococcal)

or public health.  A growing body of scientific evidence unavailable to the

*Jacobson* court demonstrates vaccinations that are "unavoidably unsafe" and often

cause more harm than good to society.[14]  The potential of a reckless vaccination

mandate to actually trigger a pandemic, rather than avoid one, is supported by

credible scientific evidence.[15] It goes without saying that the pharmaceutical

companies manufacturing the vaccines under the no fault liability system existing

in the United States have little incentive to deliver safe vaccinations.[16]

Manipulating disease for profit without liability is a dangerous practice, but lawful

under the no-fault liability system that protects vaccine manufacturers supplying

the United States.  *See generally Bruesewitz, et al. v. Wyeth LLC*, 131 S.Ct. 1068

(2011).   Plaintiffs-Appellants however bring a different claim involving their

rights to refuse vaccinations that has not been considered by the Court in more

than a century based on substantive due process rights in addition to claims of

religious discrimination.

---

[14]http://www.who.int/immunization/newsroom/press/China_WHO_approval_vaccine_regulatory_system/en/, http://www.nature.com/nature/journal/v507/n7490_supp/full/507S12a.html , http://www.fda.gov/iceci/enforcementactions/warningletters/2014/ucm401719.htm, http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm312929.htm , http://www.fda.gov/iceci/enforcementactions/warningletters/2008/ucm1048323.htm http://therefusers.com/refusers-newsroom/cdc-forced-to-release-documents-showing-they-knew-vaccine-preservative-causes-autism/#.U9agwfldVfI

[15]    http://www.ncbi.nlm.nih.gov/pubmed/23358727
[16]    Bruesewitz v. WYETH LLC, 131 S. Ct. 1068, 1100 (2011)

Plaintiffs-Appellants' claim is they hold sincere religious beliefs contrary to the practice of vaccinating that is predicated on corporate greed, unethical practices and human experimentation that targets children, soldiers, health care workers and others who cannot escape the vaccination mandates, and that they have First, Ninth and Fourteenth Amendment guaranteed rights to refuse to submit to reckless vaccination mandates that violate their rights as citizens of the United States. Plaintiffs-Appellants put their faith in God, not Pharma. They view manipulating a healthy immune system with vaccines to be a form of idolatry, and a lack of respect in their Creator, in addition to their substantive due process rights to refuse experimental treatments that could injure their children.[17]

A. Jacobson Requires Review of Mandates

Under *Jacobson*, Defendant-Appellees are required to prove that the mandates are (1) necessary, (2) non-discriminatory, (3) harm avoidant, and (4) proportionate to the disease risks against which the state requires vaccination. This Court has a duty to examine New York State's mandates and determine if they do

---

[17]    *Kor v. Bayer AG*, 200-cv-03883-WGB, Eva Mozes Kor, a concentration camp survivor and her identical twin sister Miriam were subjected to experiments performed by the infamous Dr. Joseph Mengele. Her suit alleged that Bayer supplied Dr. Mengele with experimental drugs and germs that he injected into his subjects to test their effectiveness. This lawsuit alleged specific examples of horrific experiments that were carried out on thousands of twins — only 200 of whom survived the war.

indeed meet this high bar that shifts the burden here to Defendant-Appellees before assessing the constitutionality of any of Plaintiffs-Appellants' claims.    *See Jacobson, supra.* Defendants-Appellees have offered nothing, no proof of the efficacy of their required vaccines resulting in a substantive due process violation under the Fourteenth Amendment to individuals refusing them.

On July 1, 2014, the Defendant-Appellees added six more vaccines to the already bloated New York City school immunization schedule.  Two previously required doses of the dangerous MMR vaccine[18] were removed from the schedule and are now no longer required, and replaced with more shots added as boosters totaling another million or so doses.  All of this was done without any proof the vaccination mandates are necessary, without explanation, without notice and without legislative or judicial review.  Additionally, for the first time this upcoming school year, pre-schoolers in New York City are required to receive the flu vaccine under the new mandates.[19]  Nowhere else in the world pre-schoolers required to get a flu shot outside of New York City.

---

[18]    http://www.merck.com/product/usa/pi_circulars/m/mmr_ii/mmr_ii_pi.pdf (see adverse reactions, pg 6), and  http://www.merck.com/product/usa/pi_circulars/p/proquad/proquad_pi.pdf (see adverse reactions, pg. 5)
[19] http://www.hrsa.gov/vaccinecompensation/dojpresentation.pdf ,
http://www.hrsa.gov/vaccinecompensation/reportfromdepartmentjustice.pdf ,
http://www.hrsa.gov/vaccinecompensation/dojaccv2013.pdf

Laws targeting health or bodily intrusion are subject to heightened scrutiny. *See Planned Parenthood of Southeastern Pa. v. Casey*, 505 US 833, 871 (1992). Before enforcing a mandatory vaccination law, a government entity must prove that it is necessary for the public health. *See Jacobson, supra.* This is necessary for the proponent to prove that the law is necessary and that it can withstand this heightened scrutiny. *Jacobson* requires courts to assess the constitutionality of vaccination mandates; courts may not defer blindly to state authorities. *Jacobson, supra.*

The district court, citing its own seemingly confusing Eastern District precedent, stated that New York's vaccine program is "well within the State's police power and thus its constitutionality is too well established to require discussion." *Caviezel v. Great Neck Pub. Sch.*, 500 F.App. 16 (2d Cir. 2012), (citing *Mc Cartney v. Austin*, 31 A.D.2d 370 (3d Dep't 1969)). This assertion however is in error and fails to comport with *Jacobson*'s Fourteenth Amendment Due Process requirements. The *Jacobson* decision requires that vaccination mandates occur only in highly circumscribed situations: when there is "an emergency," "imminent danger," when "an epidemic of disease…threatens the safety of [society's] members" and when the epidemic "imperil[s] an entire population." *Jacobson.* at 29, 27, 29, 31. Compulsory vaccination under the

Massachusetts statute in *Jacobson* was for all adults, not a subgroup of youngsters, and Massachusetts even excluded many children because of their greater vulnerability. *Id*. at 12.

*Jacobson's* requirements that state vaccination mandates be (1) necessary, (2) non-discriminatory, (3) harm avoidant, and (4) proportionate to the risk of disease. *Id*. *Jacobson* hardly offers states *carte blanche*, and it goes further still. It requires that if vaccination mandates are arbitrary and unreasonable then courts must "interfere for the protection" of those affected. *Id*. at 28. *Jacobson* foresaw that there might be vaccination mandates that were "a plain, palpable invasion of rights secured by the fundamental law," and in such cases, the Supreme Court considered it "the duty of the courts to so adjudge." *Id*. at 31. In short, *Jacobson* does not permit courts to sit back and let states or municipalities impose whatever mandates they like; it requires that courts assess the constitutionality of each vaccination mandate individually, as the Supreme Court did for the sole smallpox mandate in *Jacobson*.

The sweeping assertion that the constitutionality of vaccination mandates is "too well established to require discussion" has a profound and tragic legacy. It was precisely this judicial outlook that led the Supreme Court in 1927 to affirm the constitutionality of Virginia's compulsory eugenic sterilization law in *Buck v. Bell*.

274 U.S. 200 (1927). Oliver Wendell Holmes, writing for the majority, stated that "the principle that sustains compulsory vaccination is broad enough to cover cutting the Fallopian tubes. Three generations of imbeciles are enough." *Id*. at 207. This misguided eugenic decision led directly to the compulsory sterilization of tens of thousands of poor, minority and working class Americans between the 1920's and mid-1970's. Today, forced sterilization is considered a war crime, yet the Supreme Court sustained its constitutionality through its overbroad interpretation of *Jacobson. Rome Statute of the International Criminal Court Art. 8(2)(b)(xxii) (1998)*.  Surely courts should avoid this tragedy today and apply *Jacobson*'s due process criteria with scrutiny and diligence.

Religious objectors are not automatically exempt from vaccinations. PHL 2164 is in fact a work-around for *Jacobson*, giving people like Plaintiffs-Appellants the opportunity to opt out of mandates that offend their fundamental religious beliefs.  It is for this reason that even though Plaintiffs-Appellants have religious or medical exemptions, they cannot be secure in the knowledge that their exemptions will protect their constitutional rights to bodily integrity.  New York State and City may revoke or reinterpret their medical and religious exemption laws and policies at any time.  Thus Plaintiffs-Appellants continue to have standing to contest the constitutionality of New York State's vaccination mandates on

Fourteenth Amendment Due Process grounds.  Plaintiffs-Appellants argue that New York State's mandates are arbitrary, oppressive, unreasonable and "go so far beyond what was reasonably required for the safety of the public, as to authorize or compel the courts to interfere." *Jacobson* at 28. This Court has a duty to examine New York State's mandates and determine if they do indeed meet this high bar.

Indeed, not all vaccination mandates are created equal.  *Jacobson* upheld a smallpox vaccination mandate for the whole population because smallpox is an airborne, highly contagious, potentially fatal disease.  New York State's vaccination mandates are dramatically different from the Massachusetts mandate of more than a century ago.  Many vaccines that New York City requires for pre-school admission, including the flu, varicella and hepatitis B vaccines, are of questionable necessity, proportionality and harm avoidance.  Furthermore, New York's mandates may not be non-discriminatory as they target children selectively while the whole population is at risk to get and transmit the diseases targeted by childhood vaccinations. In short, *Jacobson* imposes real due process criteria on vaccination mandates that this Court must review before reaching a judgment on their constitutionality.

In this matter, the Court granted an FRCP 12(b)(6) series of Motions to Dismiss without making any inquiry into the necessity of vaccines mandates as

required by *Jacobson*.  As a result, issues of fact exist that the district court must address on remand.

### B. *Caviezel* Does Not Bar Plaintiffs-Appellants' Substantive Due Process Claims

The Second Circuit should distinguish *Caviezel* from this lawsuit and Plaintiffs-Appellants Ninth and Fourteenth Amendment Claims.  *See Caviezel v. Great Neck Public Schools, et al.*,  500 F. App'x 16 (2nd Cir. 2012) (citing *Jacobson v. Massachusetts*, *supra*; *Accord Zucht v. King*, 260 U.S. 174, 176 (1922); *McCartney v. Austin*, 31 A.D.2d 370, 371, 298 N.Y.S.2d 26, 27 (3d Dep't 1969)). First, the *Caviezel* applicants never alleged that their child had medical contraindications to vaccines.  By contrast, the Check Plaintiff-Appellant has alleged that her child has medical contraindications to vaccinations and is entitled to a medical exemption.  *Caviezel* never addressed the issue of substantive due process rights to a vaccine exemption where the applicant has medical contraindications to vaccines and their administration. Second, the Court has overlooked the Supreme Court's applicable Ninth and Fourteenth Amendment(s) Personal Autonomy jurisprudence.  While this court must evaluate New York's vaccination mandates in light of *Jacobson*, it cannot simply stop there.  A great deal has changed over the course of the last century, not least the way the Supreme

Court sees personal autonomy, the right to informed consent and the right to medical decision-making.  In *Jacobson*, the Supreme Court's standard of review was only rational basis.  Today vaccination mandates require at least intermediate scrutiny, if not strict scrutiny, because this state action imposes on fundamental liberty interests.  *City of Cleburne Texas v. Cleburne Living Center*, 473 U.S. 432 (1985).  To view New York's vaccination mandates solely through the lens of the police power, without taking into account Plaintiffs' fundamental liberty interests, is to look at one side of a two-faced coin.

Since the 1960's, the Supreme Court has established clear precedents under the Fourteenth Amendment due process clause requiring states to prove that their interference in medical autonomy is "necessary, and not merely rationally related to, the accomplishment of a permissible state policy." *Griswold v. Connecticut*, 381 U.S. 479, 497 (1965) (citing *McLaughlin v. Florida*, 379 U.S. 184 (1964)). In the 1990's, the Supreme Court set limits on state interference with medical autonomy in three landmark cases: *Cruzan, supra*; *Washington v. Harper*, 494 U.S. 210 (1990); *Washington v. Glucksberg*, 521 U.S. 702 (1997).  While these cases do not discuss vaccination, their reasoning on bodily integrity and medical decision making locate a constitutionally protected, fundamental liberty interest in refusing unwanted medical treatment under the Ninth and Fourteenth Amendments and is

41

applicable here. *Cruzan* found that the "freedom from unwanted medical attention is unquestionably among those principles 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Cruzan* at 305 (quoting *Snyder v. Mass.*, 291 U.S. 97, 105 (1934)).

The Supreme Court has upheld two distinct and contradictory lines of cases that pertain to state vaccination mandates – one focused on collective health and the limits of individual rights, and the other focused on the fundamental rights to liberty and bodily integrity. *See* B. Jessie Hill, *The Constitutional Right to Make Medical Treatment Decisions: A Tale of Two Doctrines*, 86 Tex. L. Rev. 277 (2007). Because both lines of cases pertain to Plaintiff-Appellants' challenges, it is critical that this Court inquire whether the state's mandates indeed meet the requirements of intermediate or strict scrutiny.

Viewing these mandates solely through the lens of police power of *Jacobson,* as the district court's decision to dismiss seems to do, is both incomplete and insufficient to protect the Plaintiffs-Appellants' constitutional rights. Neither does *Caviezel* settle the law in the Eastern District nor address Plaintiffs-Appellants' constitutional claims that transcend religion discrimination under PHL 2164. Plaintiffs-Appellants request the Court consider the Supreme Court's precedents on personal autonomy and medical decision making in considering this

42

appeal.  Plaintiffs-Appellants respectfully state that under *Jacobson* Defendant Appellees are required to demonstrate that the overly aggressive vaccination mandates in New York City, not found anywhere else in the world, are necessary for protecting the public health before assessing the constitutionality of their claims.

## C. *Caviezel* Does Not Bar Plaintiff-Appellants' First Amendment and Fourteenth Amendment Claims under NYS PHL 2164

The *Caviezel* court held that the family's beliefs against vaccinating were not religious, but were rather secular in nature.  *See Caviezel*, *supra*.  By contrast, Defendant-Appellee City has admitted that Phillips and Mendoza-Vaca Plaintiffs-Appellants have religious beliefs contrary to vaccinating.  Plaintiff-Appellant Check had a religious exemption based on sincere beliefs granted to her under PHL 2164 that was rescinded because of her "medical considerations."  Similarly, *Jacobson* did not involve an individual seeking a religious exemption from vaccines, nor did the mandate in question apply to children.  The Supreme Court and the Second Circuit never ruled that *Jacobson* bars a First Amendment claim to a vaccine exemption based on religion, under either of the religion clauses of the First Amendment.  Moreover, the vaccination exemptions sought here are provided for by statute under PHL 2164.  The Eastern District precedent of *Sherr* requires if

43

a vaccination exemption is allowed it cannot be granted or denied in a way that violates the First Amendment. This pivotal legal finding clarified the fact that Americans cannot be denied free exercise of religious beliefs regarding vaccination simply because those beliefs are personal and not beliefs held by an organized church or religion. *Caviezel* in contrast merely held the state does not have to provide for a religious exemption relying on the police power of *Jacobson*, but when it does as in New York *Sherr* not *Caviezel* is controlling.

## CONCLUSION

Based upon the foregoing, Plaintiffs-Appellants' claims should survive Defendants-Appellees' Motion to Dismiss and the Opinion of the district court reversed.

WHEREFORE, Plaintiff-Appellant seeks an Order reversing the District Courts Order Dismissing Appellants' claims and other just and appropriate relief as the Court may deem proper.

/s/  Patricia Finn, Esq.
Patricia Finn, Esq.
Patricia Finn Attorney, P.C.
450 Piermont Avenue
Piermont, NY 10968
Tel.: (845) 398-0521
Fax: (888) 874-5703
patriciafinnattorney@gmail.com

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,204 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.

<u>/s/  Patricia Finn, Esq.</u>
Patricia Finn, Esq.
Patricia Finn Attorney, P.C.
450 Piermont Avenue
Piermont, NY 10968
Tel.: (845) 398-0521
Fax: (888) 874-5703
patriciafinattorney@gmail.com

45

SPECIAL APPENDIX

# <u>TABLE OF CONTENTS</u>

Order of Sandra L. Townes, dated May 20, 2013, adopting Report
and Recommendations of USMJ Bloom recommending a denial of
preliminary injunction for Check's religious exemption ................................. SPA-1

Order of USDJ Kuntz, dated March 12, 2014, adopting
Report and Recommendations of USMJ Bloom dated
September 11, 2013 recommending a denial of a preliminary
injunction for Check's Medical Exemption ....................................................... SPA-7

Judgment dated June 5, 2014 by Judge William F. Kuntz, III
dismissing complaint.......................................................................................... SPA-11

Order dated June 20, 2014, denying Plaintiff's Motion
to Re-argue Dismissal pursuant to FRCP 12(b)(6) ......................................... SPA-17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

DINA CHECK, on behalf of Minor MC,

                      Plaintiff,

      -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                  Defendant.
-------------------------------------------------------------- x

**FILED**
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N.Y

★  MAY 2 0 2013  ★

BROOKLYN OFFICE

**MEMORANDUM AND ORDER**

**ADOPTING THE REPORT**

**AND RECOMMENDATION**

13-cv-791 (SLT) (LB)

**TOWNES, United States District Judge:**

      By order to show cause, Dina Check ("Plaintiff") applied for a preliminary injunction to require the New York City Department of Education ("Defendant") to admit her five-year-old daughter to school without her being immunized as required by section 2164 of the New York State Public Health Law. This action was referred to Magistrate Judge Lois Bloom for a ruling. On March 1, 2013, Judge Bloom held a hearing on Plaintiff's application and, on March 22, 2013, she filed a report and recommendation (the "R & R") recommending that Plaintiff's application be denied. Plaintiff filed objections to the R & R on April 12, 2013, to which Defendant did not respond.

      Pursuant to 28 U.S.C. § 636(b)(1), this court must make a *de novo* determination of those portions of the R & R to which objections have been made. In light of Judge Bloom's detailed memorandum carefully outlining the underlying facts and legal principles in this case, only a brief exposition of Plaintiff's objections is necessary.

I. STANDARDS OF REVIEW

      A plaintiff seeking a preliminary injunction must demonstrate (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the

**SPA-1**

merits to make them a fair ground for litigation and a balance of hardships tipping decidedly

toward the party requesting preliminary relief. *See Christian Louboutin S.A. v. Yves Saint*

*Laurent American Holding, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012) (internal quotations and

citations omitted).

Section 2164 of the New York Public Health Law requires every student to receive

certain immunizations before attending "any public, private or parochial child caring center, day

nursery, day care agency, nursery school, kindergarten, elementary, intermediate or secondary

school." N.Y. Pub. Health L. § 2164(1)(a). The law provides an exemption to this requirement

for students whose parents object to the mandated immunizations on religious grounds. *See*

N.Y. Pub. Health L. § 2164(9). To qualify for an exemption pursuant to section 2164(9), courts

have generally required that a plaintiff demonstrate his or her beliefs are (1) religious, (2)

genuine, and (3) sincere. *See Caviezel v. Great Neck Pub. Sch.*, 701 F. Supp. 2d 414, 427

(E.D.N.Y. 2010).

## II. DISCUSSION

The court presumes familiarity with the factual background in this matter, as detailed in

the R & R.

Plaintiff objects only to the portion of the R & R concluding that she has failed to

demonstrate a likelihood of success on the merits. More specifically, she disputes the

conclusion in the R & R that she failed to establish that she seeks an exemption to

immunizations on behalf of her daughter on the basis of "religious" beliefs. On this score,

Plaintiff asserts that any medical concerns she may have about vaccines are irrelevant to

whether or not her beliefs are sufficiently religious in nature to warrant an exemption under

section 2164(9) and should not have been considered by the magistrate judge. The court

disagrees. As the district court noted in *Sherr v. Northport-East Northport Union Free Sch.*

2

**SPA-2**

*Dist.*, "'views founded, upon, for instance, medical or purely moral considerations' fall outside the scope of the exemption provided by section 2164(9)." 672 F. Supp. 81, 92 (E.D.N.Y. 1987). Moreover, "an individual's assertion that the belief he holds [is religious] does not . . . automatically mean the belief is religious." *Mason v. General Brown Cen. Sch. Dist.*, 851 F.2d 47, 51 (2d Cir. 1988). Thus, Plaintiff's medical concerns about vaccinations are highly relevant to determining whether her application for a religious exemption is based on religious concerns or medical considerations.

The court also concludes, as Judge Bloom did, that in light of Plaintiff's medical concerns, her refusal to vaccinate her child is based on her belief that vaccines can, and indeed have, caused harm to her child. As succinctly stated in the R & R, "Plaintiff's resolve to protect her child does not constitute a religious belief." (R & R at 12.) At the hearing, Plaintiff discussed the dangers she associates with vaccines, stating that she had conducted research and discovered that there are "chemicals and the toxins that are put into these vaccines. Some are poison to our bodies. Some chemicals, they are manmade." (Tr. at 12, 20-21.)[1] In this regard, she expressed concern that when a child is immunized, a parent is not informed of what ingredients are in the vaccine or where those ingredients came from. (*See id.* at 13) )("[W]hen you go to get these immunizations you are not told what's in them. You are not told what you are putting into your body. They don't come to you and hand you a list."); *id.* at 14 ("When you mix the blood of animals, the blood of beasts with the blood of human, it is defiling the body. You don't do it. You just don't do it. You don't put . . . it's . . . we don't know how this animal was killed, how it was presented forward. We don't know where it came from. We – just don't do it.").) In response to a direct question about why Plaintiff was seeking protection from

---

[1] "Tr." refers to the transcript of the preliminary injunction hearing held before Judge Bloom on March 1, 2013 (Document No. 19).

3

**SPA-3**

vaccines, she answered,

> It could hurt my daughter. It could kill her. It could put her in
> anaphylactic shock. It could cause any number of things. A lollipop
> that you can eat or you can have, anybody in this room could eat a
> lollipop and they could enjoy the pleasure of this taste. My daughter
> cannot because she will break out in rashes all over her face and
> she will break out in rashes through her body. So we do not try to
> – to just do anything that's unnatural or that could affect her in any
> way and I'm just using the smallest thing, a lollipop, because I have
> to use open eyes and open mind and open heart and open spirit with
> everything that I do to protect this child.

(Id. at 15-16.) And, in later testimony elaborating on how she came to believe that her daughter

should no longer be vaccinated, Plaintiff described at length the harmful medical effects that

she believes the vaccines have had on her daughter. (Id. at 24-25.) Following a particularly

harrowing experience, Plaintiff described herself as putting her "hands in the air and [saying], I

am putting this on the Lord. I will not go to and give her any more of these immunizations. I will

not listen and I will not do any medication." (Id. at 25.)

That Plaintiff's mistrust of vaccinations is driven by health reasons and not religious

conviction is further supported by the documentation that she submitted in support of her

lawsuit. In a letter from Plaintiff dated October 26, 2012 outlining why she believes she is

entitled to a religious exemption, she wrote, "I am requesting this religious exemption because it

is my strong belief that all vaccines are made with toxic chemicals that are injected into the

bloodstream by vaccination." (Complaint Ex. 3.) Plaintiff continued that, because her daughter

was born with a compromised immune system, she realized that she "had to eliminate solid

foods from her [daughter's] diet and put her on . . . an amino acid based formula for her

survival. . . . [Plaintiff's daughter's] immune system will not tolerate any artificial sugars or

genetically modified foods, medications, etc." (Id.) Moreover, in the Request for Religious

Exemption to Immunization Form that Plaintiff provided to Defendant, she stated that she was

4

**SPA-4**

seeking a religious exemption to immunization because "vaccines are made with toxic chemicals that are injected into the bloodstream by vaccination. All vaccines are made with foreign proteins (viruses and bacteria) and some vaccines are made with genetically engineered viral and bacterial materials." (Complaint Ex. 1.) Under these circumstances, as noted in the R & R, the court concludes that concerns about Plaintiff's daughter's health and safety are the true driving force behind her opposition to immunizing her child.

To be clear, the court expresses no opinion on whether a plaintiff may be entitled to a religious exemption based partially on his or her religious beliefs. Rather, in light of Plaintiff's extensive testimony emphasizing the malignant effects that she believes past vaccinations have had on her daughter, the harmful composition of the vaccinations, and her belief that further vaccinations would physically endanger her daughter, the court concludes only that Plaintiff's aversion to immunization is here based on her conviction that vaccines pose a severe medical risk to her child's welfare. The court in no way means to diminish or minimize Plaintiff's fear of immunization. That fear, however, is not a proper basis for a religious exemption. *See Caviezel*, 701 F. Supp. 2d at 429 ("The Court finds that one of the reasons [Plaintiff] objects to vaccinations is because it may not be safe . . . Her concern in that regard is real, and understandable, but it is not based on a religious belief.").

To be sure, Plaintiff often refers to God and religion in describing her aversion to immunizations, and Judge Bloom found Plaintiff's testimony regarding her religious beliefs credible and compelling. Indeed, this court has no doubt that Plaintiff is a deeply religious woman whose religion plays an important, and even central, role in her life. However, not every belief held by a religious person is a religious belief. Thus, while Plaintiff's religious beliefs undoubtedly offered her comfort and guidance when her child was ill, as Plaintiff explained in her request for a religious exemption, she turned to holistic medicine, not out of religious

5

**SPA-5**

devotion or belief, but rather because of a desire to heal her child. (*See* Complaint Ex. 3 (Plaintiff noting that after antibiotics failed to improver her daughter's condition, she "turned to holistic medicine which has aided in the healing of my daughter. My relationship with the Lord grew stronger through my prayers and guidance from the word of God.").) Plaintiff's desire to protect her child from what she believes will cause her harm is undeniable, but it does not justify a religious exemption. *See Sherr*, 672 F. Supp. at 91 (noting that section 2164(9) was designed in part to "prevent individuals from avoiding this health requirement enacted for the general welfare of society, merely because they oppose such medical procedures on the basis of personal moral scruples or by reason of unsupported personal fears.") (quotation marks and citation omitted). Accordingly, the court adopts the R & R and denies Plaintiff's application for injunctive relief.

### III. CONCLUSION

The R & R [20] is hereby adopted in its entirety. The court concludes that Plaintiff's aversion to vaccinations for her child stems from her personal fear for her child's well-being and not a religious belief such that she is entitled to a religious exemption. Accordingly, Plaintiff has failed to demonstrate a likelihood of success on the merits and her application for a preliminary injunction [3] is denied.

SO ORDERED.

/SANDRA L. TOWNES
United States District Judge

Dated: *May 20*, 2013
Brooklyn, New York

6

**SPA-6**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
NICOLE PHILLIPS, individually and on behalf of          :
B.P. and S.P., minors,                                 :
                                                       :          DECISION AND ORDER
                        Plaintiff,                     :
                                                       :          12-cv-98 (WFK) (LB)
                        -against-                       :
                                                       :
CITY OF NEW YORK,                                      :
                                                       :
                        Defendant.                     :
-----------------------------------------------------------------------X
FABIAN MENDOZA-VACA, individually and on              :
behalf of MM and VM, minors,                           :
                                                       :
                        Plaintiff,                     :
                                                       :          12-cv-237 (WFK) (LB)
                        -against-                       :
                                                       :
CITY OF NEW YORK,                                      :
                                                       :
                        Defendant.                     :
-----------------------------------------------------------------------X
DINA CHECK, on behalf of minor MC,                    :
                                                       :
                        Plaintiff,                     :
                                                       :          13-cv-791 (WFK) (LB)
                        -against-                       :
                                                       :
NEW YORK CITY DEPARTMENT OF                           :
EDUCATION,                                             :
                                                       :
                        Defendant.                     :
-----------------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge**

**SPA-7**

On September 11, 2013, United States Magistrate Judge Lois Bloom issued a Report and

Recommendation recommending that this Court deny Plaintiff's second motion for a preliminary

injunction. Dkt. No. 37 ("the Recommendation"). On September 23, 2013, Plaintiff timely

objected to the Recommendation, arguing that the Court's reliance on controlling authority was

"in error" and that this Court should retain jurisdiction over Plaintiff's state law claim. Dkt. No.

38 ("Plaintiff's Objection") at 8, 10. For the reasons set forth below, Magistrate Judge Bloom's

Recommendation is ADOPTED in its entirety.

   The facts in this action are meticulously detailed in Magistrate Judge Bloom's

Recommendation, and will not be restated here. *See* Dkt. No. 37.

   A district court reviewing a magistrate judge's report and recommendation "may accept,

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

judge." 28 U.S.C. § 636(b)(1)(C); *see also McGrigs v. Killian*, No. 08-cv-6238, 2009 WL

3762201, at *2 (S.D.N.Y. Nov. 10, 2009) (Berman, J.). Under 28 U.S.C. § 636(b)(1) and Rule

72(b)(2) of the Federal Rules of Civil Procedure, parties may submit "specific written

objections" to a magistrate judge's report and recommendation "[w]ithin 14 days after being

served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28

U.S.C. § 636(b)(1)(C). Reports and recommendations on dispositive matters are reviewed *de

novo*. Fed. R. Civ. P. 72(b)(3). Because a "Motion for a Preliminary Injunction is dispositive,"

Magistrate Judge Bloom's Recommendation advising that this Court deny Plaintiff's motion will

be reviewed *de novo*. *Mitchell v. Century 21 Rustic Realty*, 233 F. Supp. 2d 418, 430 (E.D.N.Y.

2002) (Platt, J.) *aff'd*, 45 F. App'x 59 (2d Cir. 2002). "The district court need not, however,

specifically articulate its reasons for rejecting a party's objections or for adopting a magistrate

judge's report and recommendation in its entirety." *Morris v. Local 804, Int'l Bhd. Of Teamsters*, 167 F. App'x 230, 232 (2d Cir. 2006).

As articulated in the Recommendation, in order to obtain a preliminary injunction a plaintiff must demonstrate: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012) (internal quotations omitted). Magistrate Judge Bloom's report carefully detailed the facts relevant to plaintiff's motion and methodically considered each of the criteria in light of the parties' arguments and analogous case law. Ultimately, she concluded that "New York state law provides the process by which plaintiff may seek relief" and therefore "this Court should decline to address plaintiff's claim for a medical exemption here." Dkt. No. 37 at 10.

Plaintiff opposes the Recommendation on the ground that "[t]he denial of the medical exemption violates Plaintiff's substantive due process rights protected by the Fourteenth Amendment, and Plaintiff's rights of privacy and bodily autonomy protected in the Ninth Amendment." Dkt. No. 38 at 7. Yet instead of explaining why the Fourteenth and Ninth Amendments control her medically-based motion for a preliminary injunction, Plaintiff focuses her efforts almost entirely on attempting to distinguish *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), and even challenging it as "old, outdated law." Dkt. No. 38 at 7–10. This approach is mistaken because Magistrate Judge Bloom did not rely on *Jacobson* at all in the Recommendation. Rather, Magistrate Judge Bloom held that "[b]ecause defendant's denial of [a New York state] statutory exemption is based entirely on state law, this Court should not reach the merits of plaintiff's claim for a medical exemption." Dkt. No. 37 at 8. Plaintiff does not

**SPA-9**

rebut this compelling conclusion by the Court. Plaintiff also does not elaborate how any federal

rights are at issue in her pursuit of a state medical exemption, besides a bare allusion to

Fourteenth and Ninth Amendment constitutional rights. Dkt. No. 38 at 7. Moreover, Plaintiff

stated in her objections that she "acknowledges that if all federal claims are dismissed, her state-

law claim seeking a medical exemption could be dismissed without prejudice." Dkt. No. 38 at

10. Because "Plaintiff's claim that vaccinations are medically contraindicated … is a pure state

law claim," and "[b]ecause New York state law provides the process by which plaintiff may seek

relief," Magistrate Judge Bloom was correct to decline to address Plaintiff's claim for a medical

exemption. Dkt. No. 37 at 8, 10.

For the foregoing reasons, Plaintiff's Objection is overruled and this Court hereby

ADOPTS Magistrate Judge Bloom's Report and Recommendation of September 11, 2013 in its

entirety. Therefore, Plaintiff's Motion for a preliminary injunction is DENIED.

**SO ORDERED**

Dated: Brooklyn, New York
     March 12, 2014

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge

**SPA-10**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

NICOLE PHILLIPS, individually and on behalf of
B.P. and S.P., minors,

                 Plaintiff,

       -against-

CITY OF NEW YORK; ERIC T. SCHNEIDERMAN, in
His Official Capacity as Attorney General, State of New
York; NIRAV R. SHAH, in His Official Capacity as
Commissioner, New York State Department of Health,

             Defendants.

<u>DECISION AND ORDER</u>

12-cv-98 (WFK) (LB)

-------------------------------------------------------------------X

FABIAN MENDOZA-VACA, individually and on
behalf of M.M. and V.M., minors,

                 Plaintiff,

       -against-

CITY OF NEW YORK; ERIC T. SCHNEIDERMAN, in
His Official Capacity as Attorney General, State of New
York; NIRAV R. SHAH, in His Official Capacity as
Commissioner, New York State Department of Health,

             Defendants.

12-cv-237 (WFK) (LB)

-------------------------------------------------------------------X

DINA CHECK, on behalf of minor M.C.,

                 Plaintiff,

       -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION; ERIC T. SCHNEIDERMAN, in
His Official Capacity as Attorney General, State of New

13-cv-791 (WFK) (LB)

1

York; NIRAV R. SHAH, in His Official Capacity as                    :
Commissioner, New York State Department of Health,                 :

                                                                    :

                        Defendants.                                 :
-------------------------------------------------------------------X

### WILLIAM F. KUNTZ, II, United States District Judge

Plaintiffs Nicole Phillips, Fabian Mendoza-Vaca, and Dina Check (collectively "Plaintiffs"), on behalf of their minor children, filed an Amended Complaint on November 1, 2013, challenging New York's vaccination practice on both federal and state law grounds. On December 18, 2013, this Court consolidated the three actions provided in the caption above for all purposes. Defendants City of New York and New York City Department of Education filed a motion for summary judgment or, in the alternative, a motion to dismiss on February 10, 2014. On the same day, Defendants Eric T. Schneiderman and Nirav R. Shah (collectively "Defendants") filed a motion to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the Court GRANTS the both motions and dismisses the Plaintiffs' Amended Complaint in its entirety.

### I.    BACKGROUND

Plaintiffs bring a total of seven claims against the Defendants. *See* Dkt. 28. Four claims are grounded in federal law, whereas the remaining are based on New York law. *Id.* All Plaintiffs allege that they possess sincere religious beliefs contrary to vaccination practice. *Id.* ¶¶ 20, 45, 48. The children of all Plaintiffs were granted religious exemptions from mandatory vaccinations, though the exemption for Plaintiff Check's child was later revoked. *Id.* ¶¶ 22-23, 47. Despite being granted exemptions, Plaintiffs Phillips and Mendoza-Vaca complain of their children being excluded from school each time any schoolmate reports a case of a "vaccine preventable disease." *Id.* ¶¶ 34-36, 38, 46.

Suffering varying degrees of exclusion from school, Plaintiffs bring claims arising under the First, Ninth, and Fourteenth Amendments to the United States Constitution, as well as under Article I, Section 3 of the New York State Constitution. *See* Dkt. 25. In addition, Plaintiffs bring state claims under New York Public Health Law Section 2164(9), and New York City Human Rights law, Chapter 1, Section 8-107(4). Finally, Plaintiffs Phillips and Mendoza-Vaca

bring a cause of action under New York City Chancellor's Regulation A-701(III)(A)(4)(c) and
10 NYCRR Section 66-1.10.

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss[1] pursuant to Rule 12(b)(6), the Court must accept the
factual allegations set forth in the complaint as true and draw all reasonable inferences in favor
of the Plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *In re NYSE Specialists Secs.
Litig.*, 503 F.3d 89, 91 (2d Cir. 2007). "To survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its
face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).
"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*
"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual
allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires
more than labels and conclusions, and a formulaic recitation of the elements of a cause of action
will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "Factual
allegations must be enough to raise a right to relief above the speculative level." *Id.*

## III.    DISCUSSION

Plaintiffs invoke subject matter jurisdiction in this Court under 28 U.S.C. § 1331, based
on the claims they brings under the First, Ninth and Fourteenth Amendments to the United States
Constitution. In their First Amendment cause of action, Plaintiffs claim their rights to free
exercise of religion were violated when their children were excluded from school due to their
religious beliefs running counter to vaccination practice. Plaintiffs argue that their children were

---

[1] The Court treats Defendants City of New York and New York City Department of Education
motion as a motion to dismiss rather than as a motion for summary judgment.

"arbitrarily, capriciously, unreasonably and unconstitutionally denied" the right to free exercise

of religion based on the state vaccination practice, in general, and, in particular, because the

religious exemption standards "force[] parents to detail their religious beliefs and submit to a

'test,' and the determinations of whether or not to grant the religious exemptions falls[*sic*] to the

subjective judgment of one school official who is unqualified to make such a determination."

Dkt. 28 ¶¶ 66, 69.

 The First Amendment to the United States Constitution provides that "Congress shall

make no law ... prohibiting the free exercise [of religion]." U.S. Const. amend. I. This

prohibition has been construed to apply to the States through the Fourteenth Amendment by way

of the doctrine of incorporation. *See Cantwell v. Conn.*, 310 U.S. 296, 303 (1940). All

Defendants have moved to dismiss the First Amendment claims. *See* Dkts. 32, 33.

 Plaintiffs argue that the vaccination program at issue denies their children the

constitutional right to free exercise of religion, but not only has the Supreme Court strongly

suggested that religious objectors are not constitutionally exempt from vaccinations, *Jacobson v.*

*Commonw. of Mass.*, 197 U.S. 11, 35-39 (1905), courts in this Eastern District have resolutely

found there is no such constitutional exemption. In *Caviezel v. Great Neck Public Schools*,

under nearly identical facts and citing *Jacobson*, the court held that "the free exercise clause of

the First Amendment does not provide a right for religious objectors to be exempt from New

York's compulsory inoculation law." 739 F. Supp. 2d 273, 285 (E.D.N.Y. 2010) (Spatt, J.) *aff'd*,

500 F. App'x 16 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1997 (U.S. 2013). Similarly, in *Sherr v.*

*Northport–East Northport Union Free School District*, the court explicitly held that no

constitutional right to religious exemptions exists and found that the statutory exemption New

York provides "goes beyond what the Supreme Court has declared the First Amendment to

4

**SPA-14**

require." 672 F. Supp. 81, 88 (E.D.N.Y. 1987) (Wexler, J). Although Plaintiffs opine that

*Jacobson* is bad law and ask this Court to overturn the Supreme Court decision, "this the Court

cannot do." *Caviezel*, 739 F. Supp. 2d at 285. Accordingly, Plaintiffs' First Amendment claim

is dismissed.

As to the Plaintiffs' substantive due process causes of action, the Second Circuit has

found that *Jacobson* flatly defeats any such claims. *Caviezel v. Great Neck Pub. Sch.*, 500 F.

App'x 16, 19 (2d Cir. 2012) *cert. denied*, 133 S. Ct. 1997 (U.S. 2013). Indeed, the Second

Circuit cited *McCartney v. Austin* for the proposition that New York's vaccine program is well

within the State's police power and thus its constitutionality is too well established to require

discussion. *Id.* at 19 (citing 31 A.D.2d 370, 371 (3d Dep't 1969)). In light of the Second

Circuit's holding, Plaintiffs' challenge to New York's vaccination practice on substantive due

process grounds fails and is dismissed.

Plaintiffs also claim that Defendants are violating their rights accruing under the Fourteenth

Amendment's Equal Protection Clause. However, Plaintiffs have not asserted any facts tending

to show that Defendants favored any religion over another, or that Plaintiffs are part of any

protected class. In short, Plaintiffs fail to allege the facts necessary to state a claim upon which

relief can be granted under the Equal Protection Clause, and thus their claims alleged thereunder

are dismissed. *See Caviezel*, 739 F. Supp. 2d at 282 (dismissing equal protection claims).

Lastly, with regard to Plaintiffs remaining federal claims alleged generally under the Ninth

and Fourteenth Amendments, Plaintiffs fail to state a claim upon which relief could be granted.

Therefore, this Court dismisses them in their entirety. With all federal claims dismissed, this

Court declines to exercise pendant jurisdiction over Plaintiffs' remaining state claims and

therefore dismisses them as well. 28 U.S.C. § 1367(c); *see also United Mine Workers of Am. v.*

**SPA-15**

*Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

For the foregoing reasons, Defendants' motions to dismiss are GRANTED and Plaintiffs' claims are dismissed in their entirety.  The Clerk of the Court is directed to close these cases.


**SO ORDERED**

Dated: Brooklyn, New York
       June 4, 2014                                    s/WFK


                                              HON. WILLIAM F. KUNTZ, II
                                              United States District Judge

6

**SPA-16**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

NICOLE PHILLIPS, individually and on behalf of
B.P. and S.P., minors,

            Plaintiff,

        -against-

CITY OF NEW YORK; ERIC T. SCHNEIDERMAN, in
His Official Capacity as Attorney General, State of New
York; NIRAV R. SHAH, in His Official Capacity as
Commissioner, New York State Department of Health,

            Defendants.

-------------------------------------------------------------------X

FABIAN MENDOZA-VACA, individually and on
behalf of M.M. and V.M., minors,

            Plaintiff,

        -against-

CITY OF NEW YORK; ERIC T. SCHNEIDERMAN, in
His Official Capacity as Attorney General, State of New
York; NIRAV R. SHAH, in His Official Capacity as
Commissioner, New York State Department of Health,

            Defendants.

-------------------------------------------------------------------X

DINA CHECK, on behalf of minor M.C.,

            Plaintiff,

        -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION; ERIC T. SCHNEIDERMAN, in
His Official Capacity as Attorney General, State of New

           __DECISION AND ORDER__

           12-cv-98 (WFK) (LB)

           12-cv-237 (WFK) (LB)

           13-cv-791 (WFK) (LB)

1

York; NIRAV R. SHAH, in His Official Capacity as  :
Commissioner, New York State Department of Health,  :
                                         :
             Defendants.  :
-----------------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge**

By Decision and Order entered June 5, 2014, this Court granted Defendants' motions to dismiss in their entirety. Dkt. 39. On June 10, 2014, Plaintiffs filed a notice of appeal from the final judgment of this Court. Dkt. 40. However, on June 19, 2014, Plaintiffs then filed a motion for reconsideration with this Court. Dkt. 41. Because Plaintiffs have filed a notice of appeal, this Court now lacks jurisdiction to entertain any further motions or applications related to the case. *See Pittock v. Otis Elevator Co.*, 8 F.3d 325, 327 (6th Cir.1993) ("the district court did not have jurisdiction to rule on the Rule 60(b) motion after [plaintiffs] filed a notice of appeal concerning the dismissal order"); *LaSalle Bank, N.A. v. Capco Am. Securitization Corp.*, No. 02-CV-9916, 2006 WL 1227539, at * 1 (S.D.N.Y. May 5, 2006) (Carter, J.) ("A district court can ordinarily reconsider any order, but after a party appeals a final judgment the court cannot.") (footnote omitted). Accordingly, Plaintiffs' motion for reconsideration is DENIED.

**SO ORDERED**

Dated: June 19, 2014
Brooklyn, New York

                                   s/WFK

                                   HON. WILLIAM F. KUNTZ, II
                                   United States District Judge

**SPA-18**