# 14-2156-cv

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

NICOLE PHILLIPS, individually and on behalf of B.P. AND S.P., minors, FABIAN MENDOZA-VACA, individually and on behalf of MM AND VM, minors, DINA CHECK, on behalf of minor MC,

Plaintiffs-Appellants,

-against-

CITY OF NEW YORK, ERIC T. SCHNEIDERMAN, in his official capacity as Attorney General, State of New York, DR. NIRAV R. SHAH, in his official capacity as Commissioner, New York State Department of Health, NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendants-Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR THE MUNICIPAL APPELLEES

ZACHARY W. CARTER
Corporation Counsel of the
  City of New York
Attorney for Municipal Appellees
100 Church Street, Room 6-193
New York, New York 10007
(212) 356-0846

JANE L. GORDON
  of Counsel

September 3, 2014

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

QUESTIONS PRESENTED............................................................................3

STANDARD OF REVIEW ............................................................................3

STATEMENT OF FACTS ............................................................................3

    A. New York's Mandatory Immunization Law..............................................7

    B. The City's Procedures for Parents to Request an Exemption From
       Immunization For a Child........................................................................8

    C. These consolidated actions....................................................................10

       1. The actions as originally filed........................................................10

       2. Plaintiff Check's unsuccessful applications for preliminary
          injunctions..................................................................................12

       3. The consolidation of the actions and defendants' filing of
          motions to dismiss the amended complaint ......................................15

DECISION BELOW........................................................................................16

SUMMARY OF THE ARGUMENT ..................................................................17

POINT I........................................................................................................18

          THE DISTRICT COURT PROPERLY
          DISMISSED THE AMENDED COMPLAINT
          UNDER LONGSTANDING PRECEDENT
          UPHOLDING IMMUNIZATION LAWS AS
          APPROPRIATE PUBLIC-HEALTH MEASURES ..........................18

    A. Plaintiffs' First Amendment claim fails because the Free Exercise
       Clause does not exempt parents from compulsory immunization..........19

B. Plaintiffs' Substantive Due Process Claim Fails Because Mandatory
   Immunization Is Not Shocking to the Conscience ...............................24

C. Plaintiffs' Equal Protection Claim Fails Because They Did Not Allege a
   *Monell* Policy or Allege Facts Supporting an Inference of Either
   Differential Treatment or Discriminatory Intent. ...............................25

D. Plaintiffs' Attack on Vaccinations As a Policy Matter Fails to Raise Any
   Question of Federal Constitutional Law..................................................28

E. The Plaintiffs' Ninth Amendment and State Law Claims Were Also
   Properly Dismissed. ..............................................................................31

POINT II ........................................................................................................32

   PLAINTIFFS'     RELIANCE     ON     EXTRA-
   RECORD   MATERIAL   IS   PROCEDURALLY
   IMPROPER   AND,   IN   ANY   EVENT,   IS
   INSUFFICIENT TO SALVAGE THEIR CLAIMS ...........................32

A. Plaintiffs Improperly Rely on Material That Was Not Before
   the District Court When It Ruled on the Motions to Dismiss ................32

B. Even If It Were Properly Before The Court, The Extra-Record
   Material Would Provide No Basis To Reinstate This Action. ...............34

   1. Plaintiffs' Suggestion that DOE has shown bias against Catholics
      or against Check personally are completely misplaced....................34

   2. Plaintiffs' newly raised procedural due process claim is
      unpreserved and meritless.................................................................39

CONCLUSION....................................................................................................42

CERTIFICATE OF COMPLIANCE.......................................................................43

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..........................................................................1

QUESTIONS PRESENTED...........................................................................3

STANDARD OF REVIEW ...........................................................................3

STATEMENT OF FACTS ............................................................................3

    A. New York's Mandatory Immunization Law................................................7

    B. The City's Procedures for Parents to Request an Exemption From
       Immunization For a Child........................................................8

    C. These consolidated actions.......................................................10

        1. The actions as originally filed..............................................10

        2. Plaintiff Check's unsuccessful applications for preliminary
           injunctions.............................................................12

        3. The consolidation of the actions and defendants' filing of
           motions to dismiss the amended complaint .......................................15

DECISION BELOW.................................................................................16

SUMMARY OF THE ARGUMENT ...................................................................17

POINT I........................................................................................18

           THE DISTRICT COURT PROPERLY
           DISMISSED THE AMENDED COMPLAINT
           UNDER LONGSTANDING PRECEDENT
           UPHOLDING IMMUNIZATION LAWS AS
           APPROPRIATE PUBLIC-HEALTH MEASURES .........................18

    A. Plaintiffs' First Amendment claim fails because the Free Exercise
       Clause does not exempt parents from compulsory immunization..........19

B. Plaintiffs' Substantive Due Process Claim Fails Because Mandatory Immunization Is Not Shocking to the Conscience ..................................24

C. Plaintiffs' Equal Protection Claim Fails Because They Did Not Allege a *Monell* Policy or Allege Facts Supporting an Inference of Either Differential Treatment or Discriminatory Intent. ..................................25

D. Plaintiffs' Attack on Vaccinations As a Policy Matter Fails to Raise Any Question of Federal Constitutional Law....................................................28

E. The Plaintiffs' Ninth Amendment and State Law Claims Were Also Properly Dismissed. ...............................................................................31

POINT II ........................................................................................................32

PLAINTIFFS' RELIANCE ON EXTRA-RECORD MATERIAL IS PROCEDURALLY IMPROPER AND, IN ANY EVENT, IS INSUFFICIENT TO SALVAGE THEIR CLAIMS ..........................32

A. Plaintiffs Improperly Rely on Material That Was Not Before the District Court When It Ruled on the Motions to Dismiss ................32

B. Even If It Were Properly Before The Court, The Extra-Record Material Would Provide No Basis To Reinstate This Action. ..............34

1. Plaintiffs' Suggestion that DOE has shown bias against Catholics or against Check personally are completely misplaced....................34

2. Plaintiffs' newly raised procedural due process claim is unpreserved and meritless................................................................39

CONCLUSION ................................................................................................42

CERTIFICATE OF COMPLIANCE ..............................................................43

ii

# TABLE OF AUTHORITIES

## CASES

*Abreu v. City of New York*,
657 F. Supp. 2d 357 (E.D.N.Y. 2009)......................................27

*Analytical Diagnostic Labs, Inc. v. Kusel*,
626 F.3d 135 (2d Cir. 2010) ....................................36

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................18

*Boone v. Boozman*,
217 F. Supp. 2d 938 (E.D. Ark. 2002) ..............................20, 30

*Caviezel v. Great Neck Pub. Sch.*,
739 F. Supp. 2d 273 (E.D.N.Y. 2010)..............................22, 23

*Caviezel v. Great Neck Pub. Sch.*,
500 Fed. App'x 16 (2d Cir. 2012),
*cert denied*, 133 S. Ct. 1997 (2013) ................................ *passim*

*Chambers v. Time Warner*,
282 F.3d 147 (2d Cir. 2002) ....................................19

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) ...............................21

*City of Cleburne, Texas v. Cleburne Living Ctr., Inc.*,
473 U.S. 432 (1985) ...............................22

*Clubside, Inc. v. Valentin*,
468 F.3d 144 (2d Cir. 2006) ....................................36

iii

# TABLE OF AUTHORITIES

## CASES

*Abreu v. City of New York*,
   657 F. Supp. 2d 357 (E.D.N.Y. 2009)......................................................27

*Analytical Diagnostic Labs, Inc. v. Kusel*,
   626 F.3d 135 (2d Cir. 2010) ....................................................................36

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................18

*Boone v. Boozman*,
   217 F. Supp. 2d 938 (E.D. Ark. 2002) .............................................20, 30

*Caviezel v. Great Neck Pub. Sch.*,
   739 F. Supp. 2d 273 (E.D.N.Y. 2010).............................................22, 23

*Caviezel v. Great Neck Pub. Sch.*,
   500 Fed. App'x 16 (2d Cir. 2012),
   *cert denied*, 133 S. Ct. 1997 (2013) ................................................ *passim*

*Chambers v. Time Warner*,
   282 F.3d 147 (2d Cir. 2002) ....................................................................19

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993) ................................................................................21

*City of Cleburne, Texas v. Cleburne Living Ctr., Inc.*,
   473 U.S. 432 (1985) ................................................................................22

*Clubside, Inc. v. Valentin*,
   468 F.3d 144 (2d Cir. 2006) ....................................................................36

*County of Sacramento v. Lewis,*
523 U.S. 833 (1998) ...............................................................24

*Eng v. New York Hospital,*
1999 U.S. App. Lexis 25062 (2d Cir. 1999) ..........................33

*Frazee v. Ill. Dep't of Employment Sec.,*
489 U.S. 829 (1989) ...............................................................25

*Gonzales v. Carhart,*
550 U.S. 124 (2007) ...............................................................29

*Harlen Assocs. v. Inc. Vill. Of Mineola,*
273 F.3d 494 (2d Cir. 2001) ...................................................25

*Harris v. Mills,*
572 F.3d 66 (2d Cir. 2009) .......................................................3

*Jacobson v. Commonwealth of Massachusetts,*
197 U.S. 11 (1905) ......................................................... *passim*

*Jenkins v. Comm'r,*
483 F.3d 90 (2d Cir. 2007) .....................................................31

*Kaluczky v. City of White Plains,*
57 F.3d 202 (2d Cir. 1995) .....................................................24

*Kajoshaj v. N.Y. City Dep't of Educ.,*
543 Fed. App'x 11, 15-16 (2d Cir. 2013) .....................37, 39, 40

*Local 342, Long Island Pub. Serv. Emp. v.*
*Town Bd. of the Town of Huntington,*
31 F.3d 1191 (2d Cir. 1994) ...................................................39

*Marshall v. United States,*
414 U.S. 417 (1974) ...............................................................29

*McCarthy v. Boozman,*
212 F. Supp. 2d 945 (W.D. Ark. 2002) ..................................20

iv

*Monell v. New York City Dept. of Soc. Services*,
    436 U.S. 658 (1978) ...............................................................................26

*In re Nortel Networks Corp. Sec. Litig.*,
    539 F.3d 129 (2d Cir. 2008) ..................................................................39

*Palmieri v. Town of Babylon*,
    2008 U.S. Dist. LEXIS 59550 (E.D.N.Y. Aug. 1, 2008) ........................31

*Planned Parenthood of Southwestern Pa. v. Carey*,
    505 U.S. 833 (1992) ...............................................................................22

*Prince v. Massachusetts*,
    321 U.S. 158 (1944) ...............................................................................21

*Ransmeirer v. Mariani*,
    718 F.3d 64 (2d Cir. 2013) ....................................................................32

*Salinger v. Random House, Inc.*,
    818 F.2d 252 (2d Cir. 1987) ..................................................................32

*Sherr v. Northport-East Northport Union Free Sch. Dist.*,
    672 F. Supp. 81 (E.D.N.Y. 1987).............................................................20

*Shumway v. United Parcel Serv., Inc.*,
    118 F.3d 60 (2d Cir. 1997) ....................................................................26

*United States v. Seeger*,
    380 U.S. 163 (1965) ...............................................................................25

*Velez v. Levy*,
    401 F.3d 75 (2d Cir. 2005) ....................................................................24

*Workman v. Mingo County Bd. of Educ.*,
    419 Fed. App'x 348 (4th Cir. 2011) ..................................................20, 37

*Yusuf v. Vassar Coll.*,
    35 F.3d 709 (2d Cir. 1994) ....................................................................37

*Zucht v. King*,
   260 U.S. 174 (1922) ............................................................20, 21, 30, 41

## UNITED STATES CONSTITUTION

*First Amendment*..................................................................... *passim*

*Ninth Amendment*..................................................................15, 17, 31

*Fourteenth Amendment*........................................................... *passim*

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 30(e) ..................................................................35

## STATE AND LOCAL STATUTES

Ariz. Rev. Stat. Ann. § 15-873(C) ................................................23

La. Rev. Stat. Ann. § 17:170(F) ...................................................23

N.Y. Public Health Law § 2164 ........................................... *passim*

N.Y. Educ. Law § 310 ................................................................10

N.Y. Educ. Law § 914(l) ..............................................................7

Wyo. Stat. Ann. § 21-4-309(a). ...................................................23

## STATE REGULATIONS

10 NYCRR §66-1.10 ..........................................................1, 8, 10

10 NYCRR §66-1.3(d) ..................................................................8

Colo. Code Regs. § 1009-2:II(D) .................................................23

Me. R. 10-144, Ch. 258, § 9(H)(3) ...............................................23

Mont. Admin. R. 37.95.140(10) ...................................................23

vi

N.J. Admin. Code 8:57-4.3(d) ........................................................................23

Va. Code Ann. § 32.1-47; ...........................................................................23

Utah Admin. Code r. R396-100-4(3)(a) .......................................................23

## CITY CHARTER AND REGULATIONS

N.Y.C. Charter § 551 ....................................................................................8

N.Y.C. Charter § 556 ....................................................................................8

N.Y.C. Charter §§ 556(c)(2) ..........................................................................8

24 RCNY § 3.01 ............................................................................................9

Chancellor's Regulation A-701(III)(A)(4)(c) ..............................................10

## MISCELLANEOUS AUTHORITIES

Glanz, Jason M., et al., *A Population-Based Cohort Study of
     Undervaccination in 8 Managed Care Organizations Across the
     United States*, JAMA Pediatrics (January 21, 2013)..................................5

Hinman, Alan R., et al., *Vaccine-Preventable Diseases,
     Immunizations, 1961-2011*, Morbidity and Mortality Weekly
     Report (October 7, 2011)...........................................................................4

Hodge, James G. et al., *School Vaccination Requirements: Historical,
     Social, and Legal Perspectives*, 90 Ky. L.J. 831, 833 (2002)...................3

Holland, Mary, *Compulsory Vaccination, the Constitution, and the
     Hepatitis B Mandate for Infants and Young Children*, 12 Yale J.
     Health Pol'y L. & Ethics 39, 41 (2012) ....................................................4

Imdad, Aamer, et al., *Religious Exemptions for Immunization and
     Risk of Pertussis in New York State, 2000–2011,* Pediatrics (June
     3, 2013) .....................................................................................................6

Oster, Emily, *Why States Should Aim for 100 Percent Vaccination*,
    FiveThirtyEight (Aug. 19, 2014)...........................................................5, 6

Zhou, Fangjun, et al., *Economic Evaluation of the Routine Childhood*
    *Immunization Program in the United States, 2009*, Pediatrics
    (March 3, 2014) ..........................................................................................6

Measles Outbreaks January 1 to August 25, 2014,
    http://www.cdc.gov/measles/cases-outbreaks.html..................................31

Pertussis Outbreak Trends,
    http://www.cdc.gov/pertussis/outbreaks/trends.html ...............................31

## PRELIMINARY STATEMENT

Vaccinating children reduces disease transmission and results in lower levels of most vaccine-preventable diseases in the United States. As government reports show, widespread vaccination of children must be maintained to reduce further the burden of such diseases and prevent a resurgence of them, particularly in populations with lower vaccination coverage. Indeed, epidemiological evidence shows that there has been a resurgence in some previously eradicated childhood diseases because the percentage of parents who have refused or failed to vaccinate children in accordance with recommended schedules has increased.

The plaintiffs in these consolidated actions are parents of New York City schoolchildren who raise facial and as-applied constitutional challenges to N.Y. Public Health Law ("PHL") §2164, which requires immunization of school-aged children and provides for medical and religious exemptions from those requirements. Plaintiffs also challenge New York State regulation 10 NYCRR §66-1.10, which permits the Commissioner of the State Department of Health to exclude unvaccinated children from school temporarily if there is an outbreak of certain contagious diseases. Additionally, plaintiffs raise certain state-law claims. The United States District Court for the Eastern District of New York (Kuntz, J.) dismissed the federal claims in the amended complaint for failure to state a claim

and declined to exercise supplemental jurisdiction over the state-law claims following dismissal of the federal causes of action.

This Court should affirm. The District Court correctly held that New York City's vaccination program for schoolchildren, followed pursuant to state statute, is constitutional on its face and that plaintiffs had failed to allege facts sufficient to state an as-applied claim. Longstanding precedent affirms the constitutionality of public-health measures mandating vaccination to curb and prevent the spread of communicable diseases.

Although not required to do so, New York permits parents to apply for an exemption from vaccination for their children on religious grounds. Indeed, two of the plaintiffs here, Nicole Phillips and Fabian Mendoza-Vaca, successfully obtained religious exemptions for their children. The remaining plaintiff, Dina Check, was appropriately denied a religious exemption because she failed to demonstrate that her opposition to all vaccinations was a sincerely and genuinely held religious belief, rather than a personal objection to, and fear of, immunizations generally.

Plaintiffs dispute the widely accepted facts regarding the public-health benefits of vaccinations and disregard the established law affirming the constitutionality of vaccination programs, but they provide nothing that calls into question the legal correctness of the District Court's decision. Indeed, their

2

extensive, inappropriate reliance on non-record materials on this appeal is, in substance, a concession that they are unable to challenge the dismissal order on the merits.

## QUESTIONS PRESENTED

1.    Whether the District Court properly dismissed the federal claims in the amended complaint and reasonably declined to exercise jurisdiction over the state-law claims, where the vaccination program followed in the City's schools pursuant to New York State statute is constitutional on its face under longstanding precedent, and plaintiffs failed to plausibly state an as-applied constitutional claim.

2.    Whether plaintiffs have improperly relied on materials in this appeal that were never presented to the District Court on the motions to dismiss and were included in the Joint Appendix over the municipal appellees' objection, and in any event, the extra-record material provides no basis to reinstate plaintiffs' meritless claims.

## STANDARD OF REVIEW

This Court reviews *de novo* the dismissal of plaintiffs' amended complaint. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

## STATEMENT OF FACTS

Today, there are school vaccination laws in all 50 states. James G. Hodge, Jr. & Lawrence O. Gostin, *School Vaccination Requirements: Historical,*

3

*Social, and Legal Perspectives*, 90 Ky. L.J. 831, 833 (2002) ("Each state has school vaccination laws which require children of appropriate age to be vaccinated for several communicable diseases"). These laws are credited with substantially reducing or eliminating most vaccine-preventable diseases. Alan R. Hinman, Walter A. Orenstein, & Anne Schuchat, *Vaccine-Preventable Diseases, Immunizations, 1961-2011,* Morbidity and Mortality Weekly Report, October 7, 2011, http://www.cdc.gov/mmwr/preview/mmwrhtml/su6004a9.htm. From 2000-2010, the percentage of immunized infants neared 80 percent, and for each birth cohort vaccinated with the recommended series, researchers estimated that there were 20 million fewer illnesses, 42,000 premature deaths prevented, and $13.6 billion in direct medical costs saved. *Id.* Direct and indirect savings to society are estimated to total $69 billion. *Id.*

The federal government recommends that all children between birth and age 18 receive 70 doses of 16 vaccines; the majority of states mandate between 30 and 45 of those vaccine doses before children can attend school. Mary Holland, *Compulsory Vaccination, the Constitution, and the Hepatitis B Mandate for Infants and Young Children*, 12 Yale J. Health Pol'y L. & Ethics 39, 41 (2012). However, parental refusals to vaccinate and under-vaccination practices (where parents fail to follow through on the complete series) have recently led to significant disease outbreaks. In 2008, a spike in measles, resulting in more than twice the average

4

number of annual cases, was associated with children whose parents had intentionally avoided vaccinating them. *Id.* Low immunization rates also led to recent, significant outbreaks of pertussis in California and Michigan (Exhibit B to the Declaration of Todd A. Spiegelman, dated December 18, 2013, in support of the State's motion to dismiss the amended complaint ["Spiegelman Dec."], at 23).[1] In 2010, New York experienced a recurrence of mumps and pertussis (*Id.*, at 24).

Although immunization is considered one of the most significant public health achievements of the past 100 years, an analysis of the immunization records of 323,247 children born between 2004 and 2008 found that 49 percent of children ages 2-24 months did not receive all recommended vaccinations, or did not get vaccinated according to the recommended schedule. Jason M. Glanz, et al., *A Population-Based Cohort Study of Undervaccination in 8 Managed Care Organizations Across the United States*, JAMA Pediatrics (January 21, 2013), http://archpedi.jamanetwork.com/article.aspx?articleid=1558057. Even slight decreases in vaccination rates produce significant increases in disease. Emily Oster, *Why States Should Aim For 100 Percent Vaccination,* FiveThirtyEight (Aug. 19, 2014) http://fivethirtyeight.com/features/why-states-should-aim-for-100-percent-vaccination. Using vaccination rates across all 50 states provided by the

---

[1] Unless otherwise indicated, numbers in parenthesis preceded by the letter "A" refer to pages in the Joint Appendix or documents in the record on appeal.

5

National Immunization Survey, one report found that Montana, with a 95 percent vaccination, saw four times as many cases of whooping cough as Louisiana, which has a 98.5 percent vaccination rate. *Id*.

The medical journal *Pediatrics* recently published a comprehensive survey examining the safety of vaccinations, which they credit for a 30-year increase in average life expectancy, and a 93 percent decline in infant mortality since 1900. Fangjun Zhou, et al., *Economic Evaluation of the Routine Childhood Immunization Program in the United States, 2009*, Pediatrics (March 3, 2014) http://pediatrics.aappublications.org/content/133/4/577.full.pdf+html. Religious exemptions to immunizations in New York, however, have nearly doubled in the past decade. Aamer Imdad, et al., *Religious Exemptions for Immunization and Risk of Pertussis in New York State, 2000–2011*, Pediatrics (June 3, 2013) http://pediatrics.aappublications.org/content/132/1/37.full?sid=e5f5a7a5-75b2-45e1-9630-3d90fe4ffeab. Those unvaccinated children pose a risk to themselves, to other children who cannot be protected by vaccines because of their age or an underlying medical condition, and even to vaccinated children in communities with high exemption rates. *Id*.

## A. New York's Mandatory Immunization Law

The New York State Legislature has enacted a law mandating immunizations to protect the health of state residents "by assuring that children are immunized according to current recommendations before attending day care, pre-k, or school, to prevent the transmission of disease and accompanying morbidity and mortality" (Exhibit B to the Spiegelman Declaration, at 18).

New York Education Law § 914(l) requires that every child attending public, private or parochial school submit proof of having been immunized against a list of diseases set forth in New York Public Health Law § 2164. The list includes immunization for well-known childhood diseases such as measles, mumps, polio, and chickenpox. Parents must provide proof of vaccination before the child can attend school. § 2164(7).

The Public Health Law affords parents the opportunity to seek exemptions from immunization requirements for their children on either religious or medical grounds. New York Public Health Law § 2164(9) thus recognizes a statutory religious exemption from the state's vaccination requirements for parents or guardians who "hold genuine and sincere religious beliefs" opposing immunizations. State regulations require those seeking a religious exemption to submit a written, signed statement setting forth their religious objection to the child's immunization and they permit a school official to request additional

supporting documents. 10 NYCRR §66-1.3(d). Section 2164(8) permits a parent to obtain a medical exemption from immunization for a child if a physician certifies that the immunization would be detrimental to the child's health. The State provides a suggested form for the request and recommends procedures to local school districts for reviewing those exemption requests (Exhibit A to the Reply Declaration of Todd A. Spiegelman, dated February 7, 2014).

A State Department of Health regulation, 10 NYCRR 66-1.10, also authorizes the temporary exclusion of exempt, unvaccinated children from school if there is an outbreak of certain contagious diseases. Typically, local authorities make the determination whether to exclude those children. (Declaration of Lynn Berger, M.D., M.P.H., sworn to December 17, 2013, submitted in support of the State's motion to dismiss the amended complaint, at ¶¶3-4).

**B. The City's Procedures for Parents to Request an Exemption From Immunization For a Child**

In New York City, public school health services are provided jointly by the Department of Education ("DOE") and the Department of Health and Mental Hygiene ("DOHMH"). In general, DOE employees assess applications for religious exemptions from immunization requirements, and employees of DOHMH assess applications for medical exemptions and determine whether a temporary

exclusion of unvaccinated children from school is warranted in the event of an outbreak.[2]

New York City parents or guardians seeking a religious exemption to immunization requirements must provide the school with a written explanation of the foundations for his or her religious belief opposing immunization (A100, ¶3). The explanation must (1) address, in the parent's own words, why he or she is requesting an exemption; (2) describe the religious doctrine that guides the parent's objection to immunization; and (3) describe the limitations on the objection, for example, if the objection is to only certain vaccinations, and the religious basis for that limitation (*Id.*).

The DOE's Office of School Health reviews the request and may ask for additional documentation (A100, ¶3). Each request is then reviewed and a determination is made (A101, ¶4). If the request is denied, the parent may ask for an interview, which allows the school's Health Liaison to gain a better understanding of the basis for the exemption and gives the parent an additional opportunity to present evidence in support of the request (*Id.*). The Office of

---

[2] The New York City DOHMH was created pursuant to the New York City Charter § 551, and generally has jurisdiction to regulate matters affecting health in the City. Charter § 556. DOHMH is responsible for providing health services for school children and controlling communicable diseases and conditions, including those preventable by vaccine. NYC Charter §§ 556(c)(2), (d)(7). Additionally, DOHMH may "take such action as may become necessary to assure the maintenance of public health, the prevention of disease, or the safety of the City and its residents." Rules of the City of New York, title 24 ("NYC Health Code"), § 3.01.

School Health then makes a final determination based on that material (*Id*.). If the exemption is denied, a parent may appeal the denial to the State Commissioner of Education pursuant to Education Law §310 (A94).

Chancellor's Regulation A-701 provides that DOHMH "has the right to require a school to exclude a student from the school if a student is granted either a medical or religious exemption and another student in the school is diagnosed with a vaccine preventable disease (e.g. chickenpox, measles, mumps)." The regulation further provides that "[s]uch exclusion may be for a period of up to three (3) weeks after the student with a vaccine preventable illness is no longer contagious." Chancellor's Regulation A-701 (III)(A)(4)(c). *See also* 10 NYCRR § 66-1.10.

## C. These Consolidated Actions

### 1. The actions as originally filed

In January 2010, plaintiffs Nicole Miller and Fabian Mendoza-Vaca commenced Article 78 proceedings in New York Supreme Court, Queens County, challenging the vaccination law and asserting, inter alia, violations of the First, Ninth, and Fourteenth Amendments to the U.S. Constitution (A15-28; 34-46). The City removed the proceedings to the District Court (A12-13; 31-32). Both Miller and Mendoza-Vaca, who identify as Catholics, had been granted religious exemptions from the vaccination requirement for their children, but they

10

challenged the Department's ability, pursuant to 10 NYCRR § 66-1.10 and Chancellor's Regulation A-701(III)(A)(4)(c), to exclude their children from school temporarily once there has been a outbreak in the school of a vaccine-preventable disease, in their case, chicken pox (A18, ¶12-13; 36, ¶¶11-12).

   Separately, plaintiff Dina Check, who also identifies as Catholic, sued in the District Court seeking an order permitting her to register her child M.C. in kindergarten without vaccinating her (A51-99). According to Check's complaint, a private preschool had granted M.C. a religious exemption in 2010. Check also alleges that, although she signed an application for a medical exemption rather than a religious exemption in 2012, when M.C. was entering a New York City public school kindergarten, that request for a medical exemption was submitted solely through a "clerical error" (A55, ¶13; 83). City Health officials denied her application for a medical exemption on October 18, 2012 (A56, ¶18; 85; 122-124).

   Three days after the denial of her medical exemption, Check filed an application for a religious exemption (A57, ¶22; 102, ¶8; 108-112). In her personal statement, Check expressed the belief that vaccines violate "God's directive to keep the body . . . holy and free from impurities" (A109). She also described her daughter's food allergies and compromised immune system, how Check had turned to holistic medicine as a result of those medical issues, and that she sought a

religious exemption "for the preservation of [their] faith, and the safety and well being of [her] daughter" (A109-110).

The DOE asked Check to provide additional information (A57, ¶23; 87-88), and Check essentially repeated the information in her original statement (A75-76). The DOE then denied Check's requested exemption, with instructions on how to request an interview to pursue the matter further (A58, ¶26; 90). Following that interview (A114-119), Check's application was again denied (A59, ¶29; 94). Check could have then taken an appeal to the State Commissioner of Education but decided not to do so (A184). She instead filed a federal lawsuit, claiming that the denial of her application for a religious exemption violated her rights under the First, Ninth and Fourteenth Amendments (A62-63) as well as provisions of state law (A64).

### 2. Plaintiff Check's unsuccessful applications for preliminary injunctions

In February 2013, Check sought a TRO and a preliminary injunction compelling the Department to allow M.C. to attend school (A95-99). In opposing that relief, the Department explained the process for Check's applications for medical and religious exemptions and why those applications were denied (A101-104; 122-124). The District Court then held a hearing on the motion (A132-196).

In her testimony at that hearing, Check conceded that both of M.C.'s older siblings had been immunized (A138; 158-159). She testified that when M.C.

12

was an infant, she had milk and food allergies, as well as physical reactions to the five inoculations she received (A139; 153-154). Check told the Court that, after M.C.'s condition was misdiagnosed, she turned to God for guidance, because she did not feel 'comfortable" and her faith "was leading [her] against this immunization situation for her daughter's well being" (A140; 155). Check testified that vaccinations could "kill" M.C. or "put her in anaphylactic shock" (A146), and she did not believe they were safe or effective (A151).

Check testified that vaccinating M.C. would "jeopardize" Check's relationship with God and "shame" her in his eyes (A149). Check admitted, however, that she had never discussed this with her priest until two weeks before the preliminary injunction hearing (A141-142).

Following the hearing, Magistrate Judge Bloom recommended that Check's application for a preliminary injunction be denied (A200). Magistrate Judge Bloom found that Check's testimony during the hearing demonstrated a "resolve to protect her child [that] does not constitute a religious belief" (A211). Rather, the Magistrate Judge determined, Check's testimony established that her "true driving force" was her daughter's health and safety (*Id*.). The Magistrate Judge found those motivations corroborated by the statements Check made in connection with her application for an exemption (A212). "At the core," the Court

reasoned, there was nothing religious about those statements which showed personal, rather than religious, fears relating to vaccinations (*Id.*).

The Magistrate Judge then specifically noted that, while Check agreed that she had signed the October 2012 request for a medical exemption, Check now denied that she was seeking a medical exemption and "allege[d] and adamantly testified that she had no intention of seeking a medical exemption from immunizing her daughter" (A202).

The District Court adopted the Magistrate Judge's Report and Recommendation in its entirety, agreeing that Check's concerns about immunizing M.C. did not constitute a religious belief (A227-232).[3]

In August 2013, after the City moved to dismiss Check's complaint, she again moved for an order allowing M.C. to attend school without immunizations, this time on the ground that M.C. was entitled to a medical exemption from immunization (A233-248). The City opposed that application (A249-251). Following a hearing (A255-283), the Magistrate Judge again recommended that Check's motion be denied (A284-294), reasoning that Check's claim for a medical exemption raised only state law claims and that if the City's pending motion to dismiss were granted, the Court should not exercise

---

[3] *Phillips v. City of New York*, 2014 U.S. Dist. Lexis 33047 (E.D.N.Y. Mar. 12, 2014).

supplemental jurisdiction (A291-292). Moreover, the Magistrate Judge explained, the City should have an opportunity to assess an application for a medical exemption Check might make (A292-293). The District Court again adopted the Magistrate's Report and Recommendation in its entirety and denied Check's request for a preliminary injunction  (A344-347).

### 3. The consolidation of the actions and defendants' filing of motions to dismiss the amended complaint

The Check, Phillips, and Mendoza-Vaca cases were then consolidated, and in November 2013, all three plaintiffs filed an amended complaint (A311-331), rendering the City's pending motion to dismiss moot. In the amended complaint, Check claimed to be seeking both a medical and a religious exemption, while Phillips and Mendoza-Vaca continued to challenge the temporary exclusion of their unvaccinated children from school following a chickenpox outbreak at their schools. They claimed violations of rights protected by the First, Ninth, and Fourteenth Amendments of the United States Constitution, and state law claims under the State Constitution, Public Health Law §2164(7) and (9), and City and State Human Rights Law (A312, ¶1).

The amended complaint also disputed the efficacy of vaccination requirements (A324, ¶62-¶63). Specifically, the amended complaint alleged that there are no "vaccine preventable" illnesses (¶58) and that childhood immunization programs are ineffective in controlling the spread of childhood diseases (¶ 63).

15

The City, in turn, again moved to dismiss the complaint or, alternatively, for summary judgment (A333-335), as did the State defendants (336-339).[4]

### DECISION BELOW[5]

The District Court granted the defendants' motions to dismiss the amended complaint. The Court observed that the Supreme Court had "strongly suggested" that religious objectors are not constitutionally exempt from vaccinations in *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 35-39 (1905) and that other courts since "have resolutely found there is no such constitutional exemption" (A351). Citing *Caviezel v. Great Neck Public Schools*, 500 Fed. App'x 16 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1997 (2013), which the Court described as posing "nearly identical facts" as this case, the District Court determined that the Free Exercise Clause "does not provide a right for religious objectors to be exempt from New York's compulsory inoculation law" (A351). On that basis, the Court dismissed the First Amendment claim (A352).

---

[4] In alternatively seeking summary judgment, the City's motion included a declaration from Dr. Jennifer B. Rosen, Director of Epidemiology and Surveillance for DOHMH's Bureau of Immunization. Dr. Rosen discussed the medical necessity supporting the temporary removal of non-immunized children during an outbreak of a vaccine-preventable disease. Dr. Rosen also discussed the nationally recognized standards for immunization practices in the United States, and that there is no peer-reviewed medical research to support the fears the plaintiffs describe concerning routine childhood vaccinations.

[5] *Phillips v. City of New York*, 2014 U.S. Dist. Lexis 77500 (E.D.N.Y. June 4, 2014).

The District Court also dismissed the substantive due process causes of action, reasoning that *Jacobson* and *Caviezel* "flatly defeat" the claim (A352). The Court rejected plaintiffs' Equal Protection claim on the ground that they "have not asserted any facts tending to show that Defendants favored any religion over another, or that Plaintiffs are part of any protected class" (A352).

The Court then found that plaintiffs had failed to state a claim upon which relief could be granted under the Ninth and Fourteenth Amendments, and on that basis dismissed them (A352). The Court declined to exercise pendant jurisdiction over the remaining state-law claims and dismissed those claims as well (*Id*.).

## SUMMARY OF THE ARGUMENT

Plaintiffs brought this action alleging that their constitutional rights were violated as a result of the State's vaccination law under the First, Ninth, and Fourteenth Amendments, and as a result of the City's application of that law to them. The District Court correctly concluded that plaintiffs failed to state plausible facts sufficient to establish either a facial or as-applied challenge and therefore failed to state a colorable claim against the defendants. On appeal, plaintiffs rely mainly on documents that were not before the District Court when it ruled, and are therefore not properly part of the record and should not be considered in this

appeal. In any event, those non-record documents still fail to establish any ground for reinstating the meritless claims in the amended complaint.

## POINT I

### THE DISTRICT COURT PROPERLY DISMISSED THE AMENDED COMPLAINT UNDER LONGSTANDING PRECEDENT UPHOLDING IMMUNIZATION LAWS AS APPROPRIATE PUBLIC-HEALTH MEASURES

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556). Thus, where a complaint's factual allegations do not "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, the claims are not plausible and the complaint must be dismissed. *Id.* at 570.

While the Court is bound to accept as true all of the factual allegations contained within the four corners of the amended complaint, this does not apply to legal conclusions. *Iqbal*, 556 U.S. at 680-81 (allegation that the Attorney General and the Director of the FBI adopted a policy because of the plaintiffs religion, race and national origin "was conclusory and not entitled to be assumed true").

18

Furthermore, allegations contradicted by documents incorporated or relied upon in framing the amended complaint also need not be accepted as true. *Chambers v. Time Warner*, 282 F.3d 147, 152-53 (2d Cir. 2002).

Here, plaintiffs' complaint fails to state any basis for relief. New York's mandatory vaccination program for school children appropriately balances the need to protect against the spread of communicable disease in schools, where children congregate in close quarters, with due respect for demonstrated religious or medical reasons for declining to vaccinate a particular child. The program is neutral and of general applicability, advances important government interests, and does not violate any rights protected by the First Amendment or the Equal Protection or Due Process clauses, either facially or as applied, as the District Court correctly determined in dismissing the amended complaint.

## A. Plaintiffs' First Amendment Claim Fails Because the Free Exercise Clause Does Not Exempt Parents from Compulsory Immunization.

In granting dismissal of the First Amendment claim, the District Court applied an enduring doctrine, recognized more than 100 years ago in *Jacobson v. Massachusetts*, 197 U.S. at 26, that accords broad discretion in matters of public health to the states under the police power. In *Jacobson*, the Supreme Court upheld a state law requiring residents to be vaccinated for smallpox. Since *Jacobson*, the federal courts, including this Court, have repeatedly upheld state mandatory vaccination programs over First Amendment, Equal Protection, and Due Process

challenge. *Zucht v. King*, 260 U.S. 174, 175 (1922) (upholding Texas mandatory vaccination law over due process and equal protection challenges, and finding the law as within the "broad discretion" accorded governmental officials to mandate vaccination); *Caviezel v. Great Neck Public Schools*, 500 Fed. App'x 16 (finding no right under Free Exercise Clause to a religious exemption from New York's mandatory inoculation requirements); *Workman v. Mingo County Bd. of Educ.*, 419 Fed. App'x 348 (4th Cir. 2011) ("state's wish to prevent the spread of communicable diseases clearly constitutes a compelling interest"); *Boone v. Boozman*, 217 F. Supp. 2d 938, 954 (E.D. Ark. 2002) (finding compulsory immunization of schoolchildren from Hepatitis B was constitutionally permissible because "the constitutionally-protected free exercise of religion does not excuse an individual from compulsory immunization," and "the right to free exercise of religion and parental rights are subordinated to society's interest in protecting against the spread of disease"); *McCarthy v. Boozman*, 212 F. Supp. 2d 945, 948 (W.D. Ark. 2002) ("constitutional right to freely practice one's religion does not provide an exemption for parents seeking to avoid compulsory immunization for their school-aged children"); *Sherr v. Northport-East Northport Union Free Sch. Dist.*, 672 F. Supp. 81, 88 (E.D.N.Y. 1987) ("claims of religious freedom must give way in the face of the compelling interest of society in fighting the spread of contagious diseases through mandatory inoculation programs").

Although the New York State law voluntarily recognizes a religious exemption, the First Amendment does not guarantee one. That is because "the family itself is not beyond regulation in the public interest" and "the state as parens patriae" may therefore require compulsory vaccination for a child under generally applicable law, regardless of the parents' religious beliefs, because the "right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." *Prince v. Massachusetts*, 321 U.S. 158, 166-167 (1944). As the Supreme Court long ago recognized, mandatory vaccination laws "confer not arbitrary power, but only that broad discretion required for the protection of the public health." *Zucht v. King,* 260 U.S. at 177.

The Supreme Court's more recent precedents under the Free Exercise Clause provide additional support for the rejection of plaintiffs' First Amendment claim. In *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993), the Court made clear that a law that is neutral and of general applicability "need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Id.* at 531. Here, the statute is of neutral applicability, as it applies to all children in the state. As it also provides an exemption for religious objectors as an accommodation to religious practice and belief, any burden on a religious practice is arguably even

21

less than incidental. *See Caviezel v. Great Neck Pub. Sch.,* 739 F. Supp. 2d 273, 284 (E.D.N.Y. 2010)("New York's mandatory school inoculation program need not be justified by a compelling government interest").

Legislative acts that do not interfere with fundamental rights or single out suspect classifications carry with them a strong presumption of constitutionality and must be upheld if "rationally related to a legitimate state interest." *City of Cleburne, Texas v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). *Jacobson* and its progeny affirm that it is clearly rational to inoculate children to safeguard them from communicable disease and to prevent its spread to others.

In contending that New York's vaccination program is subject to "heightened scrutiny" (App. Br., at 36), plaintiffs inappropriately rely on *Planned Parenthood of Southwestern Pa. v. Carey,* 505 U.S. 833 (1992), which weighs, inter alia, a woman's established liberty interest in controlling her body against a state's legitimate interest in protecting the potential life of a fetus. In the context of mandatory immunization, in contrast, any liberty interest ion the part of an individual has long been deemed subject to regulation for the public good. *Jacobson*, 197 U.S. at 37-38 ("We are unwilling to hold it to be an element in the liberty secured by the Constitution of the United States that one person, or a minority of persons, residing in any community and enjoying the benefits of its

22

local government, should have the power thus to dominate the majority when supported in their action by the authority of the State"). That language from *Jacobson* has never been called into question, much less overruled.

To the extent that plaintiffs' brief is construed as challenging the dismissal of claims by Phillips and Mendoza-Vaca regarding the temporary exclusion of their unvaccinated children during outbreaks of vaccine-preventable diseases, those claims were also properly dismissed. In the absence of a recognized constitutional right to be exempt from mandatory vaccination, temporary removal of unvaccinated children from school is well within the bounds of appropriate public-health measures consistent with the First Amendment. The regulation is neutral and of general applicability, as it applies to any and all school children enrolled at a New York City public school who are granted an immunization exemption, and it does not target religious beliefs. *See Caviezel*, 739 F. Supp. 2d at 284-285 (dismissing plaintiffs' First Amendment claim). Thus, the regulation withstands scrutiny under the Constitution.[6]

---

[6] Similar temporary exclusion is also practiced by many other States, including Arizona (Ariz. Rev. Stat. Ann. § 15-873[C]); Colorado (Colo. Code Regs. § 1009-2:II[D]).; Hawaii (Haw. Code R. § 11-157-5 [c]); Louisiana (La. Rev. Stat. Ann. § 17:170[F]); Maine (Code Me. R. 10-144, Ch. 258, § 9[H][3]); Massachusetts (http://www.mass.gov/eohhs/docs/dph/cdc/immunization/guidelines-vaccine-exclusions-school.pdf); Montana (Mont. Admin. R. 37.95.140[10]); New Jersey (N.J. Admin. Code 8:57-4.3[d]; N.J. Admin. Code 8:57-4.4[d]; Utah (Utah Admin. Code r. R396-100-4[3][a]); Virginia (Va. Code Ann. § 32.1-47); and Wyoming (Wyo. Stat. Ann. § 21-4-309[a]).

23

**B. Plaintiffs' Substantive Due Process Claim Fails Because Mandatory Immunization Is Not Shocking to the Conscience.**

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1. "[T]he touchstone of due process is protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (citation omitted). Substantive due process does not protect against government action that is claimed to be "incorrect or ill-advised." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995) (citation omitted). Accordingly, to state a cause of action of substantive due process, plaintiffs were required to allege governmental conduct that is so egregious or outrageous that it shocks the contemporary conscience. *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005).

Here, a valid state statute is being applied by the local government to ensure public health. There is nothing shocking or outrageous in requiring immunization of children to guard against the spread of preventable diseases. Plaintiffs merely disagree with the vaccination program, with the Department of Health's determination to temporarily exclude unvaccinated children from school during an outbreak, and with the decision to deny Check an exemption from the vaccination requirements on the particular facts that she tendered in support of her

24

application for a medical, and then a religious, exemption. That disagreement, however, is insufficient to make out a claim based on substantive due process, as the appropriateness of the exercise of the police power to require vaccination is well established. *Caviezel v. Great Neck Public Schools*, 500 Fed. App'x at 19.

Plaintiffs' reference to a "religion test" as a violation of due process (App. Br., at 27) ignores that asking those seeking a religious exemption to demonstrate a "genuine and sincere religious belief" is consistent with, and does not violate, the Free Exercise Clause. *See Frazee v. Ill. Dep't of Employment Sec.*, 489 U.S. 829, 833 (1989) (holding that states "are clearly entitled to assure themselves that there is an ample predicate" such as "sincerity," for invoking the Free Exercise Clause); *see also United States v. Seeger*, 380 U.S. 163, 165-166 (1965)(describing a "test of belief" for the purposes of a conscientious objector as "whether a given belief that is sincere and meaningful"). It therefore cannot be the kind of outrageous or egregious action subject to substantive due process analysis as a matter of law.

### C. Plaintiffs' Equal Protection Claim Fails Because They Did Not Allege a *Monell* Policy or Allege Facts Supporting an Inference of Either Differential Treatment or Discriminatory Intent.

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat "all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. Of Mineola,* 273 F.3d 494, 499 (2d Cir. 2001). Thus, an equal protection claim

alleging selective enforcement of a rule has two essential elements: (1) the plaintiff was treated differently than others similarly situated, and (2) this differential treatment was motivated by an intent to discriminate on the basis of impermissible considerations (such as race or religion), to punish or inhibit the exercise of constitution rights or by a malicious or bad faith intent to injure the person. *Id.* (citation omitted). "To be 'similarly situated,' the individuals with whom plaintiffs attempt to compare themselves must be similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (modification brackets in original omitted).

Plaintiffs' amended complaint seems to allege that the City's application of the State's mandatory vaccination law has violated their rights under the Equal Protection Clause. As an initial matter, plaintiffs' Equal Protection allegations fail under *Monell v. New York City Dept. of Soc. Services,* 436 U.S. 658, 690-91 (1978), because those allegations do not purport to challenge a policy or custom of the City. Plaintiffs have not sued any individual municipal actor, but rather have sued the City and the City's Department of Education, which is tantamount to suing the City itself. Under *Monell*, a local government may be liable under Section 1983 only based on an official policy or custom that caused the plaintiff to be subjected to the denial of a constitutional right. A "rote recitation" of a claim of municipal liability, without "factual matter of any kind," is

insufficient to state a claim. *See Abreu v. City of New York*, 657 F. Supp. 2d 357, 361 (E.D.N.Y. 2009). There are no allegations in the amended complaint of a policy or custom on the part of the City that plaintiffs purport to challenge, and on that basis, all §1983 claims against the municipal defendants fail as a matter of law.

Moreover, the state and local regulations treat similarly situated individuals the same, and there is no allegation of religious animus in the amended complaint. As the District Court properly determined (A352), the amended complaint fails to assert "any facts tending to show that Defendants favored any religion over another, or that Plaintiffs are part of any protected class." Rather, Phillips and Mendoza-Vaca, who are both "practicing Catholics" (App. Br., at 25), undeniably were granted religious exemptions under the statute. Consequently, the denial of a similar exemption to Check, who also identifies as Catholic, cannot plausibly be understood to suggest any bias against Catholics.

The District Court also correctly determined that *Caviezel* disposes of plaintiffs' First Amendment and substantive due process claim (A352), and plaintiffs' attempt to distinguish the case (App. Br., at 40-44) is unavailing. Plaintiffs suggest that a material distinction exists because Check seeks a medical exemption in addition to a religious exemption, and *Caviezel* does not address a request for a medical exemption (App. Br., at 40). But that is a distinction without

27

legal significance. Aside from the fact that, in the course of this lawsuit, Check repeatedly disavowed any intent to be seeking a medical exemption (A202), plaintiffs also never articulated a federal constitutional right implicated by the denial of Check's medical exemption, as the District Court correctly determined (A346-347).

### D. Plaintiffs' Attack on Vaccinations As a Policy Matter Fails to Raise Any Question of Federal Constitutional Law.

Plaintiffs misguidedly contend that *Jacobson* "mandates" judicial review of New York's vaccination program because "a growing body of evidence" proves that "cheaply and unsafely manufactured" vaccinations are "being forced upon children" (App. Br., at 32; 39). They claim a constitutional right "to refuse to submit to reckless vaccination mandates" (*Id*., at 34). But vaccinations are not just generally accepted to be safe, they are also credited with eliminating many diseases and improving the quality and length of life. More specifically, New York's vaccination program has survived judicial review and cannot therefore be considered "reckless," even though plaintiffs disagree with the program.

The wisdom of a vaccination program is, moreover, a matter of legislative prerogative: it is the Legislature's role to choose between opposing theories and assess evidence about various programs' efficacy. *Jacobson*, 197 U.S. at 30. School vaccination programs are fully supported by credible, peer-reviewed medical evidence. But even if the efficacy and safety of such programs were in

genuine dispute, the legislative branch has "wide discretion to pass legislation in areas where there is medical and scientific uncertainty." *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007); *Marshall v. United States*, 414 U.S. 417, 427 (1974) ("When Congress undertakes to act in areas fraught with medical and scientific uncertainties, legislative options must be especially broad"); *Jacobson*, 197 U.S. at 30 ("We must assume that when the statute in question was passed, the legislature of Massachusetts was not unaware of these opposing theories, and was compelled, of necessity, to choose between them. It was not compelled to commit a matter involving the public health and safety to the final decision of a court or jury").

Thus, plaintiffs are wrong when they suggest that *Jacobson* imposes a burden-shifting evidentiary scheme that is subject to some kind of unspecified "high bar" for judicial review of the scientific record supporting immunization (App. Br., at 35). Rather, *Jacobson* reflects an appropriately deferential judicial review of the difficult legislative decisions implicated by public-health programs like mandatory vaccination laws. As the *Jacobson* Court reasoned, because there was such strong support there for the efficacy of the smallpox vaccination, "no court, much less a jury, is justified in disregarding the action of the legislature simply because in its or their opinion that particular method was – perhaps or possibly – not the best either for children or adults." 197 U.S. at 35.

Plaintiffs also attribute to *Jacobson* a requirement that mandatory vaccination be imposed only where there is an emergency or an imminent danger, and argue that judicial review is required to assess each vaccination requirement individually (App. Br., at 36-37). That misreads the fundamental premise of *Jacobson*, which recognizes that the "mode or manner" of public health measures is within the State's discretion and that power is subject "only to the condition that no rule prescribed by a State, nor any regulation adopted by a local government agency acting under the sanction of a State, shall contravene the Constitution of the United States or infringe any right granted or secured by that instrument." 197 U.S. at 25. In *Zucht v. King*, 260 U.S. 174, moreover, the Court recognized, as an appropriate exercise of the police power, the propriety of a preventative vaccination mandate for schoolchildren for smallpox, without requiring any evidence of an imminent danger. *See Boone v. Boozman*, 217 F.Supp. 2d at 954 ("Supreme Court did not limit its holding in *Jacobson* to diseases presenting a clear and present danger").

At any rate, the incidence of certain childhood disease is on the rise. The Centers for Disease Control reports that this year, the United States is experiencing a record number of measles cases, and that, from January 1 to August 15, 2014, there were 593 confirmed cases, the highest number of cases since measles elimination was documented in the United States in 2000.

30

http://www.cdc.gov/measles/cases-outbreaks.html (last visited August 21, 2014).

There's been a 22 percent increase in reported cases of pertussis, with 22 states

reporting an increase in the last year

http://www.cdc.gov/pertussis/outbreaks/trends.html (last visited August 21, 2014).

As indicated above, those spikes are attributed to parents refusing to vaccinate their

children or under vaccinating them. There is ample public-health justification for

New York's vaccination law.

### E. The Plaintiffs' Ninth Amendment and State Law and Claims Were Also Properly Dismissed.

On appeal, plaintiffs do not meaningfully challenge the dismissal of

their Ninth Amendment claim. Nor could they reasonably challenge that ruling,

since the Ninth Amendment is not applicable to state actors. *Palmieri v. Town of*

*Babylon*, 2008 U.S. Dist. Lexis 59550, at *57 (E.D.N.Y. Aug. 1, 2008). But even if

it were, plaintiffs cannot "bolster or enhance an unavailing First Amendment

argument merely by presenting it in the dress of a Ninth Amendment claim."

*Jenkins v. Comm'r*, 483 F.3d 90, 94 (2d Cir. 2007). Consequently, the District

Court dismissal of all of plaintiffs' constitutional claims was fully consistent with

well-established precedent.

Plaintiffs also do not challenge the District Court's decision to dismiss

their state law claims for lack of jurisdiction, following its dismissal of their

federal claims. Once the federal claims were dismissed, it was appropriate for the

District Court to also decline pendant jurisdiction over the state law claims (A352-353).

## POINT II

### PLAINTIFFS' RELIANCE ON EXTRA-RECORD MATERIAL IS PROCEDURALLY IMPROPER AND, IN ANY EVENT, IS INSUFFICIENT TO SALVAGE THEIR CLAIMS

#### A. Plaintiffs Improperly Rely on Material That Was Not Before the District Court When It Ruled on the Motions to Dismiss.

For most of their brief, plaintiffs do not take issue with the District Court's reasoning in dismissing their amended complaint. Rather, they contend that "newly obtained evidence," which was improperly included in the Joint Appendix over the City's objection, requires a different result. As those arguments inextricably and improperly rest on non-record material, the Court should not consider them.

Rule 10 of the Federal Rules of Appellate Procedure defines what may be included in a record on appeal, and it requires that a record be limited "to materials presented to the trial court." *Ransmeirer v. Mariani*, 718 F.3d 64, 70 (2d Cir. 2013). Rule 10(e) permits a court to supplement a record, but only so long as the new material "clarifies [the Court's] understanding of the process by which the District Judge reached the decision challenged on appeal." *Salinger v. Random House, Inc.,* 818 F.2d 252, 253 (2d Cir. 1987). Rule 10(e), however, "is not a

device for presenting evidence [on appeal] that was not before the trial judge." *Eng v. New York Hospital*, 1999 U.S. App. Lexis 25062 (2d Cir. 1999).

Plaintiffs claim that the City uses a "quota system" for exemptions (App. Br., at 19) and in doing so, they rely on material that was not before the District Court when it ruled on the defendants' motions to dismiss (App. Br., at 20-26). Plaintiffs also contend that reports from experts challenge the medical basis for vaccinations (App. Br., at 12-13). The documents plaintiffs cited were not submitted to the District Court on the defendants' motion to dismiss, but rather were submitted by plaintiffs only in connection with their later motion for reconsideration of the decision to dismiss the amended complaint (ECF No. 41).[7] Plaintiffs filed that motion for reconsideration on June 19, 2014, nine days after they filed their notice of appeal from the dismissal ruling (ECF No. 40). The District Court immediately denied the motion for reconsideration because plaintiffs' notice of appeal had divested the District Court of jurisdiction to entertain the motion (ECF No. 42).

Consequently, the cited materials, and all arguments based on those materials, are not properly before the Court. The materials were never part of the amended complaint, were never relied on in the amended complaint either

---

[7] Unless otherwise indicated, "ECF No. ___" refers to the District Court docket entries in this matter.

33

implicitly or expressly, and cannot possibly clarify the Court's understanding of how the District Court reached its decision to dismiss the amended complaint. Therefore, this Court should disregard the extra-record materials plaintiffs cited and the arguments based on those materials.

**B. Even If It Were Properly Before the Court, the Extra-Record Material Would Provide No Basis To Reinstate This Action.**

Even if that new extra-record material were properly before the Court, plaintiffs would still be unable to establish that the District Court erred in dismissing the amended complaint.

**1. Plaintiffs' suggestion that DOE has shown bias against Catholics or against Check personally are completely misplaced.**

Relying on the extra-record materials, plaintiffs contend in a purely perfunctory manner that there exists a quota system for exemptions, that Check therefore had a "slim chance" of obtaining a medical or religious exemption, and that this violates an unspecified constitutional right (App. Br., at 19-20).

Given that Phillips and Mendoza-Vaca both obtained religious exemptions, these contentions, even if they had been presented in the District Court, would hardly have stated a facially plausible claim. At any rate, a review of the non-record correspondence on which Check's contentions are based establishes that this newly asserted claim mischaracterizes the materials on which it relies. The cited reports state immunization compliance goals for New York City public

schools and counts children exempted for religious or medical reasons as being in compliance (A515-516). Consequently, nothing in those reports can be read as creating a quota regarding the grant of religious or medical exemptions. To the contrary, because children granted religious or medical exemptions are considered to be in compliance with their vaccinations, the frequency with which those exemptions are granted will have no bearing on whether the City meets its immunization compliance goals.

Plaintiffs again rely on more non-record material—a deposition transcript of DOE employee Julia Sykes—to urge that DOE engages in unequal treatment of religions under the exemption review process (App. Br., at 20-24). Not only is that transcript outside the record on this appeal from the dismissal of the amended complaint, but neither Sykes nor the City was ever provided a copy of that deposition testimony or given an opportunity to review it and correct errors, in contravention of the requirements of Fed. R. Civ. P. 30(e), which states that a deponent "shall" have 30 days to review the transcript.

Nevertheless, Check's newly raised contentions regarding Sykes's deposition cannot overcome the plain fact that the other two plaintiffs in the lawsuit, who are both Catholics, successfully applied for religious exemptions. Check's newly raised contentions also ignore her own admissions, which led the District Court to determine that Check's "true driving force" was her daughter's

health and safety (A211; 228-229). Those admissions demonstrate that Check has no viable equal protection claim. Rather, her repeated references her daughter's allergies and immune system, her use of holistic medicine, her lack of confidence in vaccines, and her daughter's reactions to them (A70; 75), confirm that her concerns are personal in nature. Indeed, the amended complaint is replete with extensive allegations questioning the medical efficacy of vaccinations (A324).

Ultimately, Check is essentially left to allege a "class of one" equal protection claim, which requires her to allege that she individually "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010)(internal quotation marks omitted). To succeed on a class-of-one claim, assuming she were permitted to raise such a claim at this late stage, Check would have to identify at least one comparator with whom she shares "an extremely high degree of similarity" sufficient to "provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (internal quotation marks omitted). There are no such allegations in the amended complaint.

Although Check tries to meet that burden by comparing herself to co-plaintiffs Phillips and Mendoza-Vaca, or by improperly referencing the Sykes deposition transcript, she also concedes that neither Phillips nor Mendoza-Vaca initially sought a medical exemption as she did (App. Br., at 25). That fact was highly relevant to the assessment of the sincerity of Check's religious objection. Furthermore, Check's applications for exemptions extensively referenced allergies, holistic medicine, and other medical complications. Check has not shown that Phillips or Mendoza-Vaca submitted anything similar in connection with their successful requests for religious exemptions, and the exemption applications Phillips and Mendoza-Vaca are not included in the record here. Check therefore cannot show the requisite "extremely high degree of similarity" as a matter of law. *Kajoshaj v. N.Y. City Dep't of Educ.*, 543 Fed. App'x 11, 15-16 (2d Cir. 2013) ("Where, as here, plaintiffs are counseled, and the pleadings indicate more-plausible, non-discriminatory explanations for defendants" complained-of actions, a bare allegation of discriminatory animus is not enough to render an equal protection claim plausible"); *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994) (concluding that plaintiff's allegation of selective enforcement of college rules failed to state valid colorable discrimination claim in light of "abundance of other possible reasons" for disciplinary action and "lack of any specific factual support for his claim of a racial motivation"); *Workman v. Mingo County Bd. of Educ.*, 419

37

Fed. App'x at 354 (where plaintiff asserted that the statute and accompanying regulations were improperly used but pointed to no evidence of unequal treatment, as applied challenge was without merit).

Plaintiffs argue, again based on the extra-record deposition, that the City's practices do not permit a parent to assert both medical and religious objections to vaccinations, and that these practices are therefore somehow unconstitutional (App. Br., at 26-27). This contention is not only unpreserved but also misconstrues the City's practices and what actually occurred here. There is no bar to a parent seeking an exemption on both medical and religious grounds. But here, the particular sequence of events and content of Check's application for exemptions raised questions. Check initially sought a medical exemption, which was denied (A83-85). Three days later, she sought a religious exemption, including in her request extensive references to her daughter's allergies, compromised immune system, and reactions to vaccinations (A109). That sequence of events necessarily raised questions about the sincerity of Check's purported religious objections to vaccinations, which the DOE properly reviewed (A94). Its determination, moreover, was vindicated when both Magistrate Judge Bloom and the District Court determined that Check's motivation for seeking an exemption was rooted in medical and not religious reasons.

## 2. Plaintiffs' newly raised procedural due process claim is unpreserved and meritless.

Again relying extensively on the Sykes deposition, plaintiffs contend that the review process for Check was improperly handled and argue that the improper handling constitutes a denial of procedural due process (App. Br., at 27-32). No such claim was ever raised in opposition to the motions to dismiss (A341), and no such claim was ever briefed by the parties or addressed by the Court, and therefore the claim must be deemed waived. *In re Nortel Networks Corp. Sec. Litig.,* 539 F.3d 129, 132 (2d Cir. 2008). Nor should the Court exercise its discretion to entertain that unpreserved claim now, because doing so is not necessary to avoid a manifest injustice. The claim was certainly available to plaintiffs to be asserted below, yet plaintiffs proffer no reason for their failure to raise it. *Id*.

Even on the merits, however, plaintiffs fail to plausibly allege a procedural due process claim. A due process claim requires plaintiffs to (1) identify a valid property right that rises to a legitimate claim of entitlement, (2) demonstrate a deprivation of that right, and (3) show that the deprivation was without due process. *Local 342, Long Island Pub. Serv. Emp. v. Town Bd. of the Town of Huntington,* 31 F.3d 1191, 1194 (2d Cir. 1994). Although New York law creates a property right in a free public education that may not be "taken away" without the minimum procedures required by the Due Process Clause, *Kajoshaj v.*

39

*New York City Department of Education*, 543 Fed. App'x at 16, it was Check's refusal to vaccinate her child that caused the child's exclusion from school. Plaintiffs cite no authority for the proposition that Check had a protected property interest either in an exemption or in school attendance without proper vaccinations, and accordingly, they cannot establish that the vaccination decision deprived her of a protected property right in a free public education. *Cf.*, *Kajoshaj v. Dep't of Educ.*, 543 Fed. App'x at 16 (where school decided to have student repeat fifth grade, student was not denied access to New York's educational system because parents' decision to enroll student in private school rather than to repeat fifth grade "was entirely voluntary and affords no basis for claiming a violation of their procedural or substantive due process rights").[8]

Check also was accorded all the process due her. She had multiple opportunities to explain the basis of her religious objection and had an opportunity to take the issue up to the State for review but chose to forego that opportunity. Plaintiffs fail to explain why she was entitled to more than that.

---

[8] The amended complaint alleges that Check's daughter was granted a religious exemption from a private preschool that was "revoked" (A317, ¶23), thereby suggesting the existence of a protected property right. Even accepting Check's unsubstantiated allegation that the preschool had granted an exemption, the amended complaint fails to allege any plausible facts that it was revoked by the defendants.

* * *

       It is an enduring principle that mandatory school vaccination laws like the one at issue now "confer not arbitrary power, but only that broad discretion required for the protection of the public health." *Zucht v. King,* 260 U.S. at 177. That principle embodies a common sense recognition that school attendance, which confines hundreds of children and adult staff for hours at a time, creates an opportunistic environment for the spread of disease. The State's vaccination mandate, and the City's implementation of it, advances substantial public health objectives while paying due deference to genuine medical and religious exemptions. That provides the very best balance between a legitimate exercise of the police power and individual civil liberties, as recognized by more than 100 years of jurisprudence. On that basis, the District Court's order should be affirmed.

41

**CONCLUSION**

**THE ORDER APPEALED FROM SHOULD BE AFFIRMED, WITH COSTS.**

Dated:        New York, New York
              September 3, 2014

                            Respectfully submitted,

                            ZACHARY W. CARTER
                            Corporation Counsel of the
                              City of New York
                            Attorney for Municipal Appellees


                            By:    _____
                                   JANE L. GORDON
                                   Senior Counsel


JANE L. GORDON
      *Of Counsel*

42

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,478 words, including the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated:      New York, New York
            September 3, 2014

                              MICHAEL A. CARDOZO,
                              Corporation Counsel of the
                                City of New York,
                              Attorney for Appellees.


                    By:  _____
                              JANE L. GORDON
                              Senior Counsel

43