# 14-2156-CV

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

NICOLE PHILLIPS, INDIVIDUALLY AND ON BEHALF OF B.P. AND S.P., MINORS,
DINA CHECK, ON BEHALF OF MINOR MC, FABIAN MENDOZA-VACA,
INDIVIDUALLY AND ON BEHALF OF MM AND VM, MINORS,

*Plaintiffs-Appellants,*

*v.*

CITY OF NEW YORK, ERIC T. SCHNEIDERMAN, IN HIS OFFICIAL CAPACITY
AS ATTORNEY GENERAL, STATE OF NEW YORK, DR. NIRAV R. SHAH,
IN HIS OFFICIAL CAPACITY AS COMMISSIONER, NEW YORK STATE
DEPARTMENT OF HEALTH, NEW YORK CITY DEPARTMENT OF EDUCATION,

*Defendants-Appellees.*

*On Appeal from the United States District Court
for the Eastern District of New York (Brooklyn)*

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

PATRICIA FINN, ESQ.
*Attorney for Plaintiffs-Appellants
Nicole Phillips, individually and on
behalf of B.P. and S.P., minors,
Dina Check, on behalf of minor MC,
Fabian Mendoza-Vaca, individually
and on behalf of MM and VM, minors*
450 Piermont Avenue
Piermont, New York 10968
845-298-0521

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____X

NICOLE PHILLIPS, Individually and on behalf of
BP and SP, minors; FABIAN MENDOZA-VACA,
Individually and on behalf of MM and VM, minors;
DINA CHECK, Individually and on
Behalf of MC, a minor    ;

               Plaintiffs-Appellants       No.: 14-2156

      -against-

CITY OF NEW YORK; ERIC T. SCHNEIDERMAN,
in his Official Capacity as Attorney General, State of
New York; NIRAV R. SHAH, in his Official Capacity
as Commissioner, New York State Department of
Health;

              Defendants-Appellees
_____X


## Plaintiffs-Appellants' Reply Brief

Patricia Finn, Esq.
Attorney for Plaintiffs-Appellants
Patricia Finn Attorney, P.C.
450 Piermont Avenue
Piermont, NY 10968
Tel.: (845) 398-0521
Fax: (888) 874-5703
patriciafinattorney@gmail.com

1

# Table of Contents

**POINT I.**

The District Court Dismissed the Lawsuit in Error Misapplying Longstanding Precedent Involving Judicial Review of Vaccination Mandates……………………7

A. Police power does not absolve violations of fundamental rights involving religion, equal protection and due process when applying PHL 2164…………………………………………………………………….9

B. Fundamental liberty interests requiring heightened scrutiny include interests in bodily autonomy and privacy………………………...……9

C. Amended Complaint pleaded Fourteenth Amendment due process and equal protection claims in addition to substantive due process rights……..10

**POINT II.**

Religious Discrimination, Due Process, and Equal Protection Violations………..11

A. *Sherr* applies not *Caviziel*…………………………………………………14

**POINT III.**

Discovery Evidence Proves Plaintiffs-Appellants Claims of religious discrimination, equal protection and due process violations……………………...15

A. *Jacobson* Requires Review of New Evidence…………………………..15

B. *Monell* Policy Does Not Apply…………………………………………17

C. Plaintiff-Appellants Alleged facts Supporting an Inference of Either Differential Treatment or Discriminatory Intent……………………17

D. Allegations of Scientific fraud of Vaccine Safety Required Judicial Review…………………………………………………...…19

**CONCLUSION**……………………………………………………………..25

## Table of Authorities

**Cases**

*Caviezel v. Great Neck Pub. Sch*., 500 F.App'x 16 (2d Cir. 2012)…...……..4, 8, 11,

   12, 14, 15

*Cruzan v. Director, Mo. Dept. of Health*, 497 U.S. 261.....................................4, 10

*Daniels v. Williams*, 474 U.S. 327 (1986).........................................................4, 11

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905)……………..…2, 4, 7, 8, 9, 10, 11,

   12, 13, 15, 20, 25

*Krahling vs. Merck*, Index No.10-4374...................................................................23

*Lombardi v. Whitman*, 485 F. 3d 73 (2d Cir., 2007)................................................4

*Lochner v. New York, 198 U.S. 45, 25 S. Ct. 539, 49 L. Ed. 937 (1905)*…………..8

*McDonald v. City of Chicago, Illinois, et al.*, 561 U.S. 742 (2010)………………16

*Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978)....................................17

*Sherr v. Northport-East Northport U. Free Sch. D.*, 672 F. Supp. 81 (E.D.N.Y.

   1987)……………………………………………………………. 12, 14, 15, 18

**Statutes**

N.Y. Public Health Law § 2164.......................................8, 9, 11, 12, 13, 14, 17, 18

4

N.Y. DOHMH Reg. 10 N.Y.C.R.R. § 66 -1.1.........................................................23

N.Y. City Chancellor's Regulation A-701...............................................................23

## Secondary Sources

Columbia University Department of Pediatrics. *Detection of fecal shedding of rotavirus vaccine in infants following their first dose of pentavalent rotavirus vaccine*.http://www.ncbi.nlm.nih.gov/pubmed/21477676.......................................19

Michael Fitzpatrick. *The Cutter Incident: How America's First Polio Vaccine Led to a Growing Vaccine Crisis* http://www.ncbi.nlm.nih.gov/pmc/articles/ PMC1383764……………………………………………………….………23, 24

Health Impact News. *Flu Vaccine is the most Dangerous Vaccine in the U. S. based on Settled Cases for Injuries*. http://healthimpactnews.com/2014/flu-vaccine-is-the-most-dangerous-vaccine-in-the-united-states-based-on-settled-cases-for-injuries/.......................................................................................................19

Mary Holland. *Compulsory Vaccination, the Constitution, and the Hepatitis B Mandate for Infants and Young Children,* 12 Yale J. Health Pol'y L. & Ethics 39, 46 (2012)..........................................................................................................20

Susan Humphries, M.D. *Paul Offit Threatens All Vaccine Exemptions - An MD Responds*. http://www.greenmedinfo.com/blog/paul-offit-threatens-all-vaccine-exemptions-md-responds.......................................................................22

Marketwired. *CDC Epidemiologist Whistleblower Confirms New Review Showing Vaccine Autism Link*, http://www.marketwired.com/press-release/-1946409.htm......................................................................................22

Marketwired. *CDC Whistleblower Reveals Widespread Manipulation of Scientific Data on Vaccine Safety Confirming Autism Link*, http://www.ashotoftruth.org/in-the-news/press-releases/cdc-whistleblower-reveals-widespread-manipulation-scientific-data-and-top.........................................................................22

Jennifer Rosen. *Outbreak of Measles Among Persons With Prior Evidence of Immunity, New York City, 2011*, http://cid.oxfordjournals.org/content/early/

2014/02/27/cid.ciu105.............................................................................20

Jim West. *Pesticides and Polio*. http://www.wellwithin1.com/overview.htm........23

**ARGUMENT**

**POINT I.**

**The District Court Dismissed the Lawsuit in Error Misapplying Longstanding Precedent Involving Judicial Review of Vaccination Mandates**

The United States Supreme Court's holding in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) is being misapplied by the district court constituting reversible error. *Jacobson* not only discusses the police power of the state to coerce vaccination mandates, but it also examines and sets forth a fundamental liberty interest one has in refusing vaccination. The *Jacobson* decision required that vaccination mandates occur in only highly circumscribed situations: when there is "an emergency," "imminent danger," when "an epidemic of disease…threatens the safety of [society's] members" and when the epidemic "imperil[s] an entire population." *Jacobson,* 197 U.S at 29, 27, 29, 31. These highly circumscribed situations do not exist here, and to dismiss the lawsuit without examining the vaccination mandates Infant Plaintiffs are subject to misapplies this long-standing precedent set nearly a century ago by the Supreme Court in *Jacobson*.

*Jacobson* requires courts to assess the constitutionality of vaccination mandates; courts may not defer blindly to state authorities' "police power" before

deciding on the constitutionality of Plaintiffs-Appellants claims. *Jacobson* requires the Court to apply the due process criterion set forth by the Court as to whether the vaccinations are (1) necessary, (2) non-discriminatory, (3) harm avoidant, and (4) proportionate to the risk of disease as required by *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). Here the District Court, citing the Second Circuit, states that New York's vaccine program is "well within the State's police power and thus is constitutionality is too well established to require discussion." District Court Decision, SPA-15. *Caviezel v. Great Neck Pub. Sch.*, 500 F.App'x 16 (2d Cir. 2012), citing *Mc Cartney v. Austin*, 31 A.D.2d 370 (3d Dep't 1969). This assertion fails to comport with *Jacobson*'s Fourteenth Amendment Due Process requirements that includes both a procedural and substantive due process elements. Two months later after *Jacobson*, the Supreme Court more clearly articulated the doctrine of substantive due process from *Jacobson* in the *Lochner* decision. *Lochner v. New York*, 198 U.S. 45, 25 S. Ct. 539, 49 L. Ed. 937 (1905). In trying to square *Jacobson* with *Lochner*, a recent commentator, Dr. Allan Jacobs, argued that "[t]he Court's proscription of 'arbitrary and oppressive' state action may be invoking procedural due process in banning 'arbitrary' action, and substantive due process in proscribing 'oppressive' action." *See Mary Holland, Compulsory*

*Vaccination, the Constitution, and the Hepatitis B Mandate for Infants and Young Children*, 12 Yale J. Health Pol'y L. & Ethics 39, 41 (2012).

## A.     Police power does not absolve violations of fundamental rights involving religion, equal protection and due process when applying PHL 2164

*Jacobson* foresaw that there might be vaccination mandates that were "a plain, palpable invasion of rights secured by the fundamental law," and in such cases, the Supreme Court considered it "the duty of the courts to so adjudge." *Jacobson,* 197 U.S. at 31.  In short, *Jacobson* does not permit courts to sit back and let states or municipalities impose whatever mandates they like; it requires that courts assess the constitutionality of each vaccination mandate individually, as the Supreme Court did for the sole smallpox mandate in *Jacobson*. *See* Mary Holland, *Compulsory Vaccination, the Constitution, and the Hepatitis B Mandate for Infants and Young Children*, 12 Yale J. Health Pol'y L. & Ethics 39, 41 (2012).  Thus the sweeping decision of the district court, and its overbroad and misapplication of *Jacobson* requires reversal by the Court of Appeals.

## B.     Fundamental liberty interests requiring heightened scrutiny includes interests in bodily autonomy and privacy.

Plaintiffs-Appellants have constitutional rights to bodily autonomy and privacy.  The Supreme Court has stated that "the principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical

9

treatment may be inferred from our prior decisions." *Cruzan v. Director, Mo. Dept. of Health*, 497 U.S. 261, 278 *citing Jacobson v. Massachusetts*, 197 U.S. 11, 24-30 (1905) (holding that there is a fundamental liberty interest in refusing medical treatment). Plaintiffs-Appellants also have a fundamental liberty interest in refusing to be injected with toxic and life threatening vaccinations on the basis of questionable scientific findings based on the same precedent. Any such invasion of this fundamental liberty interest of Plaintiffs-Appellants must therefore be subject to heightened scrutiny, and applying a heightened standard of review as required in this case would very likely change the outcome of the district court's decision to dismiss.

C. **Amended Complaint pleaded Fourteenth Amendment due process and equal protection claims in addition to substantive due process rights**

In the Amended Complaint, Plaintiff-Appellants pleaded violations of their First, Ninth and Fourteenth Amendment rights. Fourteen times in the Amended Complaint Plaintiffs-Appellants alleged due process and equal protection violations with regard to the exemption procedures of NYS PHL 2164 enforced by the Defendant City-Appellee. *See generally* Amended Complaint, A-311. Defendant-Appellees' combined arguments that these claims of due process and equal protection were not properly raised and are now abandoned are completely

10

without merit. "The Due Process Clause of the Fourteenth Amendment serves three distinct functions in modern constitutional doctrine: "First, it incorporates [against the States] specific protections defined in the Bill of Rights....Second, it contains a substantive component, sometimes referred to as 'substantive due process.'...Third, it is a guarantee of fair procedure, sometimes referred to as 'procedural due process.'..." *Daniels v. Williams*, 474 U.S. 327 (1986) (Stevens, J., concurring).

**POINT II.**

**<u>Religious Discrimination, Due Process, and Equal Protection Violations</u>**

Plaintiffs-Appellants First Amendment claim is that the Defendant-Respondent City discriminated against them on the basis of religion based on quotas, impermissible classifications based upon religion, arbitrary religion testing and discrimination against Catholics. The deposition of Julia Sykes and the Quota letters prove it, and but for the improper dismissal of the lawsuit based on a misinterpretation of the police power in *Jacobson*, the district court would have considered the evidence.

In *Caviezel*, the Court held *Jacobson's* police power strongly suggests that religious objectors are not automatically exempt from vaccinations. *Caviezel v.*

11

*Great Neck Public Schools*, 500 Fed. App'x 16 (2d Cir. 2012).  Even if that could

be reasoned to be true in New York religious exemptions are provided by statute.

This is not a claim to require the state to provide a religious exemption; one

already exists under PHL 2164 and is being applied unconstitutionally. It is *Sherr*,

not *Caviezel* that applies in the case.   *Sherr v. Northport-East Northport Union*

*Free Sch. Dist.*, 672 F. Supp. 81, 88 (E.D.N.Y. 1987).  PHL 2164 is in fact a work-

around for *Jacobson*, giving people like Plaintiffs the opportunity to opt out of

mandates that offend their fundamental religious beliefs and for medical reasons

implicating a substantive due process right.  Although the State of New York is not

required to give religious exemptions to vaccinations, when they do they must do it

in a Constitutional manner.  *Sherr,* 672 F. Supp at 88 (holding New York's

vaccination exemption statute must not favor one religion over another).

It is for this reason that even though Plaintiffs have religious or medical

exemptions, they cannot be secure in the knowledge that their exemptions will

protect their constitutional rights to bodily integrity. Defendants Appellees'

apparently may revoke or reinterpret their medical and religious exemption laws

and add or remove vaccines at any time, and modify the schedule without

legislative, regulatory or judicial review and there is no statutory, legislative or

regulatory basis for doing so.  Thus Plaintiffs continue to have standing to contest

the constitutionality of New York State's vaccination mandates on both Fourteenth Amendment Due Process and Equal Protection grounds asserting both a procedural and substantive right to refuse dangerous and experimental vaccines. Plaintiffs argue that New York State's mandates are arbitrary, oppressive, unreasonable and "go so far beyond what was reasonably required for the safety of the public, as to authorize or compel the courts to interfere." *Jacobson,* 197 U.S. at 28. The district court has a duty to examine New York State's mandates and determine if they do indeed meet this high bar before dismissing the lawsuit and failing to consider the First and Fourteenth Amendment violations of Defendants Appellees' in applying PHL 2164 as is the case here.

Here the City's religious exemption to vaccination procedures violated the Religion Clauses of the First Amendment by permitting Ms. Sykes, a government employee, to evaluate and "test" Check's religious beliefs based on arbitrary assumptions and ill-conceived notions about religion and PHL 2164. Both the statute and the related state and city rules of procedure "force parents to detail their religious beliefs and submit to a 'test.' Leaving the determination of whether or not to grant the religious exemptions within the subjective judgment of one school official who is unqualified to make such a determination" violating Fourteenth Amendment procedural due process. Amended Complaint at Para. 69, A-325. Ms.

Sykes' deposition shows that she made decisions about Check's religious beliefs, which significantly intertwined religion with government function, had no significant secular purpose and had the primary effect of advancing some religions over others.

NYS Public Health Law 2164 is being used in such a way as to defeat its stated purpose of allowing for religious exemptions violating procedural due process. PHL 2164 has acted as a method of providing an avenue for religious discrimination to exist by forcing a government actor to pass judgment on one's religious beliefs. The Court cannot allow this to continue any longer and should strike down PHL 2164 as unconstitutional and provide for a voluntary vaccination program with philosophical exemptions based on informed consent.
http://www.nvic.org/Vaccine-Laws/state-vaccine-requirements.aspx

## A. *Sherr* applies not *Caviezel*

The *Caviezel* court held that the family's beliefs against vaccinating were not religious, but were rather secular in nature. See *Caviezel*. By contrast, Defendant-Appellee City has admitted that Phillips and Mendoza-Vaca Plaintiffs-Appellants have religious beliefs contrary to vaccinating. Plaintiff-Appellant Check had a religious exemption based on sincere beliefs granted to her under PHL

14

2164 that was rescinded because of her "medical considerations." Similarly, *Jacobson* did not involve an individual seeking a religious exemption from vaccines, nor did the mandate in question apply to children. The Supreme Court and the Second Circuit never ruled that *Jacobson* bars a First Amendment claim to a vaccine exemption based on religion, under either of the religion clauses of the First Amendment. Moreover, the vaccination exemptions sought here are provided for by statute under PHL 2164. The Eastern District precedent of *Sherr* requires if a vaccination exemption is allowed it cannot be granted or denied in a way that violates the First Amendment. This pivotal legal finding clarified the fact that Americans cannot be denied free exercise of religious beliefs regarding vaccination simply because those beliefs are personal and not beliefs held by an organized church or religion. *Caviezel* in contrast merely held the state does not have to provide for a religious exemption relying on the police power of *Jacobson*, but when it does as in New York *Sherr* not *Caviezel* is controlling.

**POINT III.**

**Discovery Evidence Proves Claim and Demonstrates Public Health Threat from Vaccination Mandates and Exemption Processes**.

**A. *Jacobson* Requires Review of New Evidence**

15

Newly obtained Discovery Evidence Proves Plaintiffs-Appellants' claim. The

district court relied on unsubstantiated "medical fears" to deny both the religious

and medical exemption.

Julia Sykes' deposition shows that the City defendant's elaborate testing and

exemption procedures violate the Constitution's Equal Protection Clause. *See*

Deposition of Julia Sykes, A-311.  The Supreme Court interprets the Equal

Protection clause of the Fourteenth Amendment broadly.  *See McDonald v. City of*

*Chicago, Illinois, et al.*, 561 U.S. 742 (2010).  Limiting religious exemptions to

members of specific, established religions violates the Constitution as it treats

similarly-situated people differently.  *Scherr*, 672 F.Supp. 81, 90 (1987). The fact

that a government actor is put in a position where she is forced to choose between

members of different religions and invade on the fundamental liberty interests of

Plaintiff-Appellants' rights of bodily autonomy and religious freedom is certainly

shocking to the conscience.  Plaintiffs-Appellants alleged that Defendants-

Appellees are using an impermissible "quota" system for granting vaccination

exemptions that is irrational and jeopardizes the health and safety of all New York

City school-age children, and the new evidence obtained in discovery proves their

claim.  Based on the Defendants-Appellees' use of a quota system even children

with valid medical and religious reasons for seeking exemptions from vaccinations,

16

like infant Plaintiff-Appellant Check, are being denied exemptions if they do not fall within the allowable 1.2% of the quota for exemptions granted to non-vaccinated children attending New York City schools. NYS DOHMM quota letter, A-516.

## B. *Monell* Policy Does Not Apply;

Contrary to the Defendants-Respondents' assertions, *Monell* cannot preclude the claims in the instant matter.  *Monell* provides certain immunity from money damages.  See *Monell v. Department of Soc. Svcs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  To the contrary, Plaintiffs-Appellants' Amended Complaint seeks injunctive relief only.  Therefore, *Monell* does not apply to the extent it would otherwise bar a suit.  Rather, 42 USC Section 1983 does permit a cause of action and abrogates any immunity to the extent it would otherwise apply.

## C. Plaintiff-Appellants Alleged facts Supporting an Inference of Either Differential Treatment or Discriminatory Intent

Furthermore, Plaintiffs-Appellants have alleged that a custom or policy exists that violates federal constitutional provisions.  They have alleged that Julia Sykes, who upon information and belief works for Defendant-Appellee City, sets policy that favors certain religions over others.   Defendant-Appellee City has set forth significant policy that violates Plaintiff-Appellants' substantive due process

17

rights to the extent that the required-vaccines do not pass constitutional review."

Plaintiff-Appellant Check alleges that Defendant-Appellees' state law and city

policies led to her daughter's exclusion from school. Amended Complaint, A-311.

Plaintiffs-Appellants Phillips and Mendoza-Vaca have mounted a constitutional

challenge to the Chancellor's Regulation that excludes children from school during

so-called outbreaks of certain illnesses. Amended Complaint, A-311. This too

qualifies as a policy.

If Ms. Sykes cannot determine the sincerity of any applicant's religious

beliefs, how can she possibly pass judgment on whether Check's beliefs comport

with PHL 2164? Ms. Sykes is tasked with determining the sincerity of Check's

religious beliefs but is unable to discern the difference between a religious belief

and a religious tenet. Sykes Deposition, A-460. Ms. Sykes states that religious

exemption letters pulled from the internet are denied, but later states that when she

is unsure whether a religion is "real", (although whether a religion is in fact "real"

is irrelevant, *Sherr v. Northport-East Northport U. Free Sch. D.,*672 F. Supp. 81

(E.D.N.Y. 1987)) she goes to the internet for her information. Sykes Deposition,

A-445.

Defendant-Appellant City of New York's assertion that PHL 2164 is a

neutral law of general applicability is incorrect. Defendant-Appellant City of New

18

York's Brief at 19. It is clear from the discussion above that PHL 2164 is being applied in a way that discriminates against different religions and improperly evaluates the sincerity of one's religious beliefs in seeking an exemption violating PHL 2164. Julia Sykes was put in a position where she was forced to choose between members of different religions.

## D. Allegations of Scientific fraud of Vaccine Safety Required Judicial Review

The potential of a reckless vaccination mandate to actually trigger a pandemic, rather than avoid one, is supported by credible scientific evidence.[1][2] …[T]he pharmaceutical companies manufacturing the vaccines [are] under [a] no fault liability system existing in the United States [and] have little incentive to deliver safe vaccinations. Plaintiffs-Appellants' Brief at Pg. 33. Manipulating disease for profit without liability is a dangerous practice. The fact the Defendants-Appellees desire to mandate vaccination based on fear tactics and fraudulent science injuring innocent children is so extreme it should schock the conscious of this court. "In order to state a claim for a substantive due process violation, Plaintiff must identify "government action…so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lomabardi v.*

---

[1] http://www.ncbi.nlm.nih.gov/pubmed/23358727 (last visited 09/17/2014)
[2] https://www.youtube.com/watch?v=13QiSV_lrDQ (last visited on 09/17/2014)

*Whitman* 485 F. 3d 73 (2d Cir., 2007)*.* Plaintiffs-Appellants are being put in a

position where they are being forced to undergo medical treatment which both

violates their rights to religious freedom, privacy and bodily autonomy and

threatens their health and the public health at large.[3] Such laws cannot be

permitted to stand, and will without a doubt be struck down after the Court reviews

the evidence Plaintiffs-Appellants will proffer on remand. Regardless of the

propaganda and fear conveyed to the public by the government and the

pharmaceutical companies, children are becoming severely injured and dying from

these vaccinations. Disease is not being controlled by vaccination.[4]

Neither Defendant Appellee provided any credible scientific or medical

evidence demonstrating the vaccination mandates are necessary, harm avoidant,

proportional and non-discriminatory as due process requires. *See generally*

*Jacobson v. Massachusetts,* 197 U.S. 11 (1905). Mary Holland, Esq*., Compulsory*

*Vaccination, the Constitution, and the Hepatitis B Mandate for Infants and Young*

*Children,* 12 Yale J. Health Pol'y L. & Ethics 39, 46 (2012)(discussing the four-part

test of *Jacobson*). The reports from the Department of Justice (DOJ) in September

2013 and December 2013 both show that the flu vaccine is the most dangerous. In

the DOJ's September 5, 2013 report on adjudicated settlements in the Vaccine

---

[3] https://www.youtube.com/watch?v=K1m3TjokVU4 (last visited on 09/17/14)
[4] http://www.hrsa.gov/vaccinecompensation/statisticsreports.html (last visited 09/17/2014)
http://cid.oxfordjournals.org/content/early/2014/02/27/cid.ciu105 (last visited 09/17/2014)

Court, 49 out of 77 adjudicated cases involved injuries from the flu shot[5]. Over

63% of the injuries were attributable to the flu shot. The December 5, 2013 report

on adjudicated settlements in the Vaccine Court was strikingly similar in that , 43

out of 70 settled claims involved the flu shot. That is 61.4% ![6] The injuries

claimed and compensated in these cases included the following: Guillain-Barre

Syndrome, Chronic inflammatory demyelinating polyneuropathy, Brachial neuritis,

Shoulder injury related to vaccine administration, Autoimmune demyelinating

condition, Bell's palsy and urticaria/angioedema, Bilateral brachial neuritis,

Meningoencephalitis and optic neuritis, Transverse myelitis, Neurologic injuries,

Brachial plexus neuritis, Serum sickness and pain amplification syndrome of

childhood/fibromyalgia, Acute disseminated encephalomyelitis, and Rheumatoid

arthritis. These injuries are serious, debilitating injuries, much more severe than

soreness, redness, tenderness or swelling where the flu shot was given, and nasal

congestion after the flu vaccine nasal spray. It is also contrary to the City's view

that any harm in the form of potential side effects is hypothetical or, at best,

unlikely to occur. Defendant-Appellee City's Opposition to Injunction, Pg. 9.

---

[5] http://www.hrsa.gov/vaccinecompensation/dojaccv2013.pdf (last visited on 09/17/2014)
[6] http://healthimpactnews.com/2014/flu-vaccine-is-the-most-dangerous-vaccine-in-the-united-states-based-on-settled-cases-for-injuries/ (last visited 09/17/2014)

More important, all of the scientific and medical evidence offered by the City involving vaccine safety is based on fraudulent studies and manufactured evidence and should be completely disregarded as unreliable. The Defendants Appellees medical evidence of vaccine safety relies on CDC data and pharmaceutical studies predicated on fraud and concealed evidence involving vaccine safety. *CDC Whistleblower Reveals Widespread Manipulation of Scientific Data on Vaccine Safety Confirming Autism Link*, http://www.ashotoftruth.org/in-the-news/press-releases/cdc-whistleblower-reveals-widespread-manipulation-scientific-data-and-top.

The Defendant-Appellee's reliance on the recommendations of the Advisory Committee on Immunization Practices (ACIP) to add boosters to the vaccination schedules for New York State and to mandate the controversial flu vaccine to children in New York City is also unreliable, bias and completely influenced by the vaccine patent owners sitting on the ACIP Board. Dr. Paul Offit claims to be an unbiased scientist with no personal interest in vaccination yet in 2008 while sitting on the ACIP as a voting member, the Children's Hospital Of Pennsylvania sold its royalty stake in Offit's vaccine RotaTeq (flu vaccine) for $182 million, and Dr. Offit received an unspecified percentage: his share of the intellectual property, said to be "in the millions." Humphries, Susan, M.D., *Paul Offit Threatens All Vaccine*

*Exemptions - An MD Responds*, http://www.greenmedinfo.com/blog/paul-offit-threatens-all-vaccine-exemptions-md-responds (accessed Sept. 13, 2014).

On Friday September 5, 2014, in *Krahling vs. Merck*, Index No.10-4374 the federal court denied yet another motion to dismiss yet another claim of alleged fraud against the Pharma giant Merck involving the controversial MMR vaccine. In *Krahling*, former Merck scientists alleged the current supplier of the MMR "boosters" is falsifying evidence on the efficacy of the MMR vaccines in controlling the spread of disease.

Even more disturbing, on August 27, 2014, Brian Hooker, Phd., biochemist and a parent of a vaccine injured child, released transcripts of recordings with a distraught Dr. William Thompson, a vaccine scientist at the CDC since 1998, confessing to a cover up during the 2001 Congressional Hearings on the controversial MMR vaccine and its link to Autism. *CDC Epidemiologist Whistleblower Confirms New Review Showing Vaccine Autism Link*, http://www.marketwired.com/press-release/-1946409.htm (last accessed September 13, 2014).

In the transcripts, Dr. Thompson says "I was complicit, and, ah, I went along with this. We didn't report significant findings. You know, I'm not proud of that and, uh, it's probably, it's the lowest; it's the lowest point in my career that I went

23

along with that paper…I have great shame now when I meet families with kids with autism, because I've, because I have been part of the problem."

The Infant Plaintiffs are being harmed because they are being excluded from school.  More vaccines, especially live vaccines like varicella, to the school schedule means more shedding which leads to infection which will lead to exclusion from school for any child with an exemption or who is "in process" during so-called outbreaks.  10 N.Y.C.R.R. § 66-1.10; NYC Chancellor's Regulation A-701 III(4)(c)(i) &(ii).  Shedding is a very real threat to all children. Shedding occurs after vaccination through the skin and bodily fluids[7]  The deluge of vaccines children receive in the first six weeks of school increase the risks to all children exposed through auto-inoculation from their schoolmates.  This is not a hypothetical injury, and it has happened before.

In April 1955, during the Cutter laboratory experiments with the polio vaccine 40,000 children developed polio from the vaccine that was rushed to market.  Shockingly, or maybe not so shockingly, a congressional hearing in June 1955 concluded that the problem was primarily the lack of scrutiny from the NIH Laboratory of Biologics Control (and its excessive trust in the National Foundation for Infantile Paralysis reports).[8]  Even more disturbing is that the cases of infantile

---

[7] http://www.ncbi.nlm.nih.gov/pubmed/21477676 (last visited on 09/17/2014)
[8] http://en.wikipedia.org/wiki/Cutter_Laboratories (last visited on 09/17/2014)

paralysis in the mid 1950's attributed to poliomyelitis may have not been caused by polio at all, but rather the introduction and wide use of a pesticide that was on going about the same time.[9] Evidence shows that the cases of infantile paralysis once thought to be caused by polio had actually waned before the introduction of the Salk vaccine. The correlation for the decline in infantile paralysis attributed to the introduction of the polio vaccine some researchers now opine was linked to the cessation of the pesticide, and not achieved by the Salk polio vaccine. *The Cutter Incident: How America's First Polio Vaccine Led to a Growing Vaccine Crisis,* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC1383764.

The health of all New Yorkers, especially the children of this state are at risk from these reckless vaccination mandates in the school immunization program. The Court must allow a review of the scientific and medical evidence. *Jacobson* does not preclude judicial review, it requires it!

### Conclusion

Based upon the foregoing, Plaintiffs-Appellants' claims were improperly dismissed.The Order of the District Court dismissing Plaintiffs-Appellants' case should be reversed along with any other just and appropriate relief as the Court may deem proper.

---

[9] http://www.wellwithin1.com/overview.htm (last visited on 09/17/2014)

/s/ Patricia Finn, Esq.
Patricia Finn, Esq.
Patricia Finn Attorney, P.C.
450 Piermont Avenue
Piermont, NY 10968
Tel.: (845) 398-0521
Fax: (888) 874-5703
patriciafinattorney@gmail.com

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)</u>

1. This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 3,873 words, excluding the parts of

the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

this brief has been prepared in a proportionally spaced typeface using

Microsoft Word in Times New Roman, 14 point font.

/s/ Patricia Finn, Esq.
Patricia Finn, Esq.
Patricia Finn Attorney, P.C.
450 Piermont Avenue
Piermont, NY 10968
Tel.: (845) 398-0521
Fax: (888) 874-5703
patriciafinattorney@gmail.com